[Civil No. 3138.   Filed May 31, 1932.]

[11 Pac. (2d) 826.]

W. A. BROOKS, Appellant, v. GEORGE B. McDEVITT, Appellee.

Mr. Charles P. Elmer, for Appellant.

Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellee.

ROSS, J.—This is an action by George B. McDevitt against W. A. Brooks to recover damages for the

conversion of a dwelling-house, located on an unpatented mining claim situate in the village of Oatman, Mohave county. The defense to the action was that said dwelling was a fixture and belonged to the owner of the mining location. The case was tried to a jury, and resulted in a verdict in favor of plaintiff assessing his damages at $600. Judgment was entered for such sum. The defendant has appealed.

Omitting nonessential assignments and contentions, we will go directly to the heart of the case. If there is any dispute in the evidence on the issue of the character of the property as being personalty or realty, it is more apparent than real. It appears that in 1915 one George Skidmore had located the mining claim under the name of the Clara Bell Fraction. In November of 1915 he optioned this claim to one A. J. Moore, who agreed to organize a mining company to develop it and to give Skidmore 10,000 shares of the promotion stock in payment thereof, said stock to be delivered to Skidmore upon obtaining a permit to sell stock from the Arizona Corporation Commission. This sale was never consummated. Plaintiff, as the associate and representative of Moore, entered into the possession of the mine, and, in February thereafter, with the consent of Moore and subsequently of the Oatman Rand Mining Company, the company organized to develop the mine, proceeded to build a two-room house thereon (to which three or four additions were later made), with the understanding that it should remain the personal property of plaintiff.

On January 5, 1916, Skidmore gave written consent to plaintiff to construct a building on the claim, and authorized him to sell surface rights and to use what he realized from sales in purchasing lumber for such building, with the understanding that, if Moore, or his assigns, failed to complete the purchase of the mine, the agreement would have the

effect of a bill of sale of the building placed upon the mine. The evidence is that the dwelling in question was not constructed of lumber purchased with the proceeds of sales of the surface grounds, but was wholly paid for by plaintiff. The building was a frame dwelling with a tin roof. The walls consisted of 1x12 boards nailed upon 2x4's. It was on a very steep hillside, and the flooring joists on the upper side rested on the ground. The lower side was built up with rocks and earth to keep the wind from blowing under the floor. The building was not attached to the soil by cement or otherwise than indicated. It was occupied from April of 1916 on by plaintiff and his family, most of the time, and, when not so occupied, was used by plaintiff's mine employees.

In January of 1919 defendant Brooks bought the building from Skidmore, the locator of the Clara Bell Fraction mining claim, for $50, and received from the latter as evidence of his title a bill of sale. And along about that time, and while plaintiff and family were absent, defendant entered the building and took possession. But later on plaintiff regained possession and held it until about March 1, 1930, when defendant repossessed it and has since occupied and claimed the building. The dwelling was assessed to plaintiff as personalty, and he paid the taxes thereon every year up to the time he was dispossessed by defendant.

The annual representation work for 1918 was not performed, and on January 1, 1919, defendant, Brooks, located the claim.

We think under this evidence it was proper for the court to submit to the jury the determination of the question as to whether the dwelling-house was personal property belonging to the plaintiff or a fixture belonging to the owner of the soil. Defendant does not question the submission of that issue to the

jury, but complains of one of the court's instructions on the point, reading as follows:

"You are instructed that if you find from the evidence that the building in question in this suit was built and constructed by plaintiff McDevitt at his own costs and expense upon the Clarabell Fraction with the understanding and intention that it should be and remain the personal property of plaintiff McDevitt, you will find for the plaintiff."

This instruction, standing alone, was clearly erroneous, in that it fails to identify "the understanding and intention" as that of the mine owner. 26 C. J. 672, § 29. The court, however, in another part of its instructions, given at defendant's request, said:

"In the absence of an agreement on the part of the land owner to the contrary, a building affixed to land becomes a part thereof and belongs to the owner of the soil.

"The owner of an unpatented mining claim is considered in law as the owner of the soil and if you find from the evidence in this case that at the time the building was constructed George Skidmore was the owner of the soil and if you further find that this building is so affixed to the land as to be a part thereof, in order for you to return a verdict in favor of the plaintiff you must believe from preponderance of the evidence that Skidmore had agreed that the building could be removed."

When these instructions are taken together, as they should be under our rule, they correctly state the law.

We find, however, that the case must be reversed on account of the following instruction:

"You are instructed that if you find the building in question in this suit was the personal property of plaintiff McDevitt you are further instructed to find the reasonable value of such building at the time it was taken by defendant Brooks in establishing the amount of damages to which plaintiff may be entitled;

in doing so you should take into consideration the costs of construction, repairs that may have been necessary to be made, the rents received by defendant, the purposes for which the building was being used theretofore by plaintiff and any other facts or circumstances which in your judgment have been established by the evidence relating to value, and in no event should you find damages for the plaintiff to exceed Two Thousand Dollars ($2,000.00) as there is no evidence whatsoever in the record to exceed that sum.''

The court in this instruction told the jury, in effect, that there was evidence that the dwelling was worth $2,000, in saying that there was no evidence whatsoever to exceed that amount. We have carefully read the plaintiff's testimony, and it stands alone as to such high value, and, considering it most favorably, it does not support the verdict of $600. Plaintiff was asked to give the approximate figures of what he expended in the original construction and in the additions, to which he made answer as follows:

''Well, it would be hard for me to give any definite figures, but as near as I can recall the first building that was on there, say the original construction, the labor was high, the material was high, and it cost me around probably $600.00 or $800.00, and then from then on we had additions and a screen porch and had to do a lot of grading down there to put them on and make room for them. It was on a terribly high side hill. . . .

''We did a great deal of work there—probably a couple thousand dollars' worth of work. I have no idea. There was a lot of things added there. Put up a garage too. I would not say definitely what that building cost me.''

If the construction cost were a proper measure of value, the evidence is too indefinite upon which to base a verdict. Under the circumstances, it could afford very little aid to the jury in fixing the value of the building. The building, as disclosed by the evidence,

was more valuable when the mines in and around Oatman were in full operation. At the time the property is alleged to have been converted, the mines were not working many men, and there was very little demand for such a dwelling. It was also quite conclusively shown that the dwelling had deteriorated very much, many of the doors being down, the windows broken, and the floors warped. Defendant introduced evidence to the effect that it was not worth more than $50. It will also be noted that some of the cost plaintiff estimated as entering into the building was the grading of the lot and the construction of a garage. Whatever was done in the way of leveling or grading the lot could not be taken into consideration in placing a value upon the building as the personal property of the plaintiff, and he is not suing for the value of the garage. Plaintiff was not asked and did not testify as to the present value of the dwelling. No witness gave it a value of $600 or anywhere near it.

Since the case must be sent back for a new trial, we wish to say we think the court's rulings on the admission of evidence to prove value were such as not to aid the jury very much. Unquestionably on March 1, 1930, the date of the conversion, there was very little demand for such a structure, and its value could not very well be proved by the ordinary rules. The defendant undertook to show, by residents and citizens of Oatman, what buildings of similar structure, design, and condition sold for in the neighborhood. This, we think, was proper evidence, and should have been admitted.

Defendant contends that, if he did not acquire ownership of the dwelling by bill of sale from Skidmore, he did so when he located the ground it was on as a mining claim. This again depends upon whether it was a fixture. If, by reason of the manner it was attached to the soil, it became a part of the

soil, the relocator acquired it; but, if it was not affixed to the soil, or if the parties treated it as a chattel, it should be regarded as personalty. 2 Lindley on Mines, 3d ed., § 409. Bills of sale are employed to transfer title to personalty and deeds to real estate. Both Skidmore and defendant must have considered it as a chattel and not realty, for to transfer title they used the written instrument generally employed in chattel transactions. We think the question was one for the jury.

It is claimed that the verdict was a quotient one. This conclusion is arrived at from a slip of paper found in the jury room after the verdict was rendered, upon which were placed twelve sets of figures which, when added together and divided by twelve, approximated the verdict. It is mere speculation as to what these figures mean, unless we accept the affidavit of a juror explaining them as the figures used in arriving at the verdict. This we may not do under the rule heretofore announced. *Hull* v. *Larson*, 14 Ariz. 492, Ann. Cas. 1915C 1145, 131 Pac. 668; *Southwest Cotton Co.* v. *Ryan*, 22 Ariz. 520, 199 Pac. 124. The affidavit of a juror cannot be used to impeach his verdict in a civil action.

The judgment is reversed and the cause remanded for a new trial.

McALISTER, C. J., and LOCKWOOD, J., concur.