[Civil No. 4068.   Filed October 23, 1939.]

[94 Pac. (2d) 870.]

HARRY WILSON, Sometimes Known as A. C. WILSON, Appellant, v. CHARLES O. WIGGINS, Appellee.

Mr. Larry Meloy, for Appellant.

Messrs. Minne & Sorenson and Mr. George T. Wilson, for Appellee.

ROSS, C. J.—This is an action by Charles O. Wiggins against Harry Wilson for money had and received. It was tried with a jury and resulted in a verdict and judgment for plaintiff. The defendant appeals. The ground of his appeal is claimed error by the court in not granting his motion for a new trial. The verdict was signed by nine jurors. The other three did not sign. Judgment was rendered July 1, 1938. Thereafter defendant filed his motion to set the verdict and judgment aside and to grant him a new trial on the following grounds:

"I. Irregularity in the proceedings of the jury whereby the moving party, to-wit, the defendant was deprived of a fair trial.

"Irregularity in the proceedings of the selection of the jurors on *voir dire* examination as to their qualifications to act as trial jurors, whereby the moving party, to-wit, the defendant was deprived of a fair trial.

"II. Misconduct of the jury."

This language of the motion is rather indefinite as it fails to indicate what irregularity occurred in the selection of the jury. However, we learn the point wished to be made is that juror H. S. Gibbs on his *voir dire* gave false answers to questions as to his qualification to sit in the case as a juror.

██ The right to trial by jury is provided for by the Constitution, in section 23, article 2, and that means an impartial jury. The law gives each party to a civil action four peremptory challenges and an unlimited number for cause. Secs. 1924, 1925, Revised Code of 1928. The purpose is to secure a fair and

impartial jury. That the parties may intelligently exercise these rights of challenge, they are privileged to examine prospective jurors as to their qualifications, and their answers must necessarily be accepted as true unless the questioner knows, or has reason to believe, them to be false.

In this case, the affidavits supporting the motion for a new trial state the court asked the jurors as a panel if any of them knew the defendant Wilson, and that juror Gibbs remained silent and did not make any answer; that neither the defendant nor his attorney knew such juror, or that such juror knew them, and had no reason to believe the juror knew defendant until after the return of the verdict; that after the return of the verdict, the three dissentient jurors came to defendant and his attorney and told them that Gibbs had stated in the jury room, before a verdict was reached, that he knew defendant

"as a bootlegger and a gambler and he wouldn't believe his word on oath, or words to that effect."

The affidavits of four jurors were filed in support of the motion, and they fully corroborated the principal affidavits made by the defendant and his attorney.

Plaintiff filed affidavits of four jurors to the effect that during the deliberations of the jury they did not hear Gibbs make a statement as follows:

"That he, juror Gibbs, had known Harry Wilson, and that he was a gambler and selling bootleg whiskey, or that he, juror Gibbs, had known Harry Wilson and visited his place of business on numerous occasions, and that no statement uttered during the deliberations of said jury influenced the undersigned in arriving at the verdict rendered in said cause."

Gibbs also denied making the statement charged against him.

The action of the court on the motion for new trial and the motion to strike impeaching affidavits of jurors is recorded in the minutes in this language:

"It is Ordered by the Court denying the motion of defendant for a new trial.

" It is further Ordered by the Court granting the motion of plaintiff to strike the affidavits of jurors Claude Layton, Robert H. Stapley and D. C. Kindrick."

The only assignment is that the court erred in striking the affidavits.

■ If we assume that the affidavits of the jurors impeaching, or tending to impeach, their verdict were proper evidence for that purpose, then the controverting affidavits were also proper evidence. The court resolved the conflict in favor of the verdict and we would not be justified in ignoring the court's finding. Rather, the rule is that on appeal such finding will be adopted by this court.

■ It is, however, very strenuously urged by plaintiff that the action of the trial court in striking the impeaching affidavits of the jurors should be sustained. It is ground for a new trial if a juror have personal knowledge of material facts in the case, or is biased or prejudiced against the unsuccessful party, if such ground of objection was denied or concealed upon proper inquiry on his *voir dire* examination. 46 C. J. 92, sec. 51. According to the showing, juror Gibbs had knowledge of material facts but concealed it by remaining silent when questioned by the court. This concealment was first discovered in the jury room by his fellow jurors while the jurymen were considering the case. There is no evidence of any concealment or any bias or prejudice on the part of Gibbs other than that contained in the affidavits of his fellows, and such knowledge was obtained by the affiants in their capacity as jurors and not otherwise.

■ This court is committed to the rule that "the affidavit of a juror will not be received to impeach the verdict." This rule was first announced in *Hull* v. *Larson*, 14 Ariz. 492, 131 Pac. 668, Ann. Cas. 1915C 1145. It has been followed in *Southwest Cotton Company* v. *Ryan*, 22 Ariz. 520, 199 Pac. 124, and *Brooks* v. *McDevitt*, 40 Ariz. 221, 11 Pac. (2d) 826. We quote from the Hull case [14 Ariz. 492, 131 Pac. 669, Ann. Cas. 1915C 1145]:

"From very early times it has been nearly universally held that, in the absence of a statute permitting it, the affidavit of a juror will not be received to impeach the verdict. 'Nothing is better settled as a general proposition than that the affidavits of jurors are not admissible to impeach their finding.' Thompson & Merriam Jur. § 414. And, quoting from the same authority: 'Upon the ground of public policy, the courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, or to explain it, . . . or that they agreed on their verdict by average, or by lot.' Thomp. & M. Jur. § 440, citing many cases.

"The Penal Code of Arizona, par. 988, subd. 14, provides that the voluntary affidavit of a juror shall be competent to prove any misconduct of the jury or to sustain the verdict, but there is no such provision contained in our Code of Civil Procedure for civil cases, and we are therefore bound by the common-law rule."

It is contended by defendant that these three cases involved quotient verdicts and are not applicable to the facts in the present case. It will be observed that the language of the decision in the Hull case is very general and, in its terms, applies to all cases.

The reason for the rule, disallowing affidavits or statements or depositions of jurors to impeach their verdicts, is fully explained in *McDonald* v. *Pless*, 238

U. S. 264, 35 Sup. Ct. 783, 784, 59 L. Ed. 1300, as follows:

" . . . let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

"The rule on the subject has varied. Prior to 1785 a juror's testimony in such cases was sometimes received, though always with great caution. In that year Lord Mansfield, in *Vaise* v. *Delaval,* 1 T. R. 11, refused to receive the affidavit of jurors to prove that their verdict had been made by lot. That ruling soon came to be almost universally followed in England and in this country. Subsequently, by statute in some states, and by decisions in a few others, the juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors, was made admissible. And, of course, the argument in favor of receiving such evidence is not only very strong, but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a . change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' *Cluggage* v. *Swan,* 4 Binn. 155, 5 Am. Dec. 400; *Straker*

v. *Graham,* 4 Mees. & W. 721, 7 Dowl. P. C. 223, 1 Horn & H. 449, 8 L. J. Exch. N. S. 86.''

Defendant, however, would have us make exception to the general rule in this case. He contends that the silence of the juror was misconduct, that it permeated the whole proceeding, and cites cases that seem to uphold his position. Among the cases is *Williams* v. *Bridges,* 140 Cal. App. 537, 35 Pac. (2d) 407. In this case, because the concealment was on *voir dire* and before the impanelment of the jury, the court held that the affidavits of jurors might be taken to show that the jurors' answers were false. It relies largely upon the case of *People* v. *Galloway,* 202 Cal. 81, 259 Pac. 332, a criminal case, in which affidavits of jurors impeaching the verdict were admitted under subdivision 3 of section 1181 of the Penal Code of California. We have no statute changing the common-law rule.

This court's decisions are in line with the great majority of the courts. 46 C. J. 353, sec. 373; 64 C. J. 1108, sec. 914; *Hinkel* v. *Oregon Chair Co.,* 80 Or. 404, 156 Pac. 438, 157 Pac. 789.

We conclude that the granting of the motion to strike the impeaching affidavits of jurors was in accordance with law, and the judgment is accordingly affirmed.

LOCKWOOD and McALISTER, JJ., concur.