389 P.2d 692

**Dr. K. E. HALL dba North Mountain Hospital, Appellant,**

**v.**

**Dolores DELVAT, Appellee.**

**No. 7031.**

Supreme Court of Arizona,

In Division.

Feb. 27, 1964.

Ernest W. McFarland, and Johnston & Gillenwater, Phoenix, for appellant.

Stephen W. Connors and Jack C. Cavness, Phoenix, for appellee.

UDALL, Chief Justice.

This action was brought in the Superior Court of Maricopa County by Dolores Delvat, plaintiff-appellee, hereinafter referred to as the plaintiff, against Dr. K. E. Hall, defendant-appellant, hereinafter referred to as defendant, for damages that accrued to plaintiff on account of alleged acts of negligence in operations performed upon her by the defendant.

The case was tried before a jury and a verdict returned for plaintiff in the sum of $50,000, with judgment entered accordingly. Motion made by defendant for a new trial was denied and this appeal followed.

The essential facts are that plaintiff had been treated by the defendant in his professional capacity for several years prior to January 1, 1957; that on the 7th day of January, 1957, defendant performed a hysterectomy on the plaintiff and that several days thereafter the defendant performed a second operation on a fistula that had developed. Later, about March 1, 1957, defendant found it necessary to close the fistula which remained closed until the 6th of March. The defendant performed a third operation on plaintiff on April 1, 1957, to alleviate an intestinal obstruction, and thereafter, on the 4th of May, the defendant did a colostomy, and on the 17th of June again closed the fistula. On July 6, 1957, plaintiff was admitted to the Maricopa County Hospital where further surgery was performed by the defendant.

In the amended complaint, plaintiff alleged general neglect on the part of defendant in rendering professional services and also, in the same count, specifically alleged that the defendant "negligently, recklessly, wantonly and carelessly cut plaintiff's bowel in one or two places; that said

cutting was not a necessary part of the operation; that during said operation defendant and or his agent negligently, recklessly, carelessly and wantonly allowed a piece of surgical rubber glove to remain inside plaintiff's abdominal cavity."

After the filing of her complaint, plaintiff's deposition was taken and the plaintiff stated under oath that the defendant did not use *proper skill in performing* operations on plaintiff, and as a result thereof he nicked the plaintiff's bowel in two places and further that at the time of the operation *a portion of a rubber glove was* allowed to remain in plaintiff's abdomen, which caused considerable trouble and infection which continued until it was removed by an exploratory operation performed by a Dr. Alesio.

In preparation for trial the defendant requested plaintiff to give the names of all of her witnesses. Plaintiff responded by giving a list, but she failed to list Dr. William H. Cleveland and Dr. Henry J. Williams, her chief expert witnesses. In answering the interrogatories plaintiff again failed to include the names of Doctors Cleveland and Williams.

In his opening statement at the beginning of the trial plaintiff's counsel disclosed for the first time that her claim was based on the proposition that defendant was negligent and violated the standard of medical practice in the following particulars:

1. That he failed to have proper assistance [assistants] at the time of the first operation;

2. That he prescribed the drug "prostigmin";

3. That he failed to perform a colostomy at the time of the closing of the fistula; and

4. That he failed to perform a double-barreled colostomy at the time of the first colostomy operation.

It is claimed by defendant that these alleged acts of negligence had never before been disclosed by the plaintiff, either in the pleadings or in answer to interrogatories, and defendant states further that for the first time the names of Dr. Cleveland and Dr. Williams were disclosed as witnesses.

At the conclusion of the opening statement the defendant pleaded surprise and moved the court either to exclude evidence in regard to the alleged acts of negligence, or grant a continuance in order that defendant could prepare for trial. These motions were denied. Thereafter, defendant objected to plaintiff's using Dr. Williams and Dr. Cleveland as witnesses, because their names had never been disclosed prior to the date of trial, and further objected to the introduction of testimony regarding the alleged acts of negligence on the part of the defendant which had never been set out in the plaintiff's complaint or in the

plaintiff's deposition. These objections were overruled.

During the course of the trial, testimony was offered to show that plaintiff's bowel had been nicked and that a rubber glove was left in the abdominal cavity, although in the opening statement plaintiff's counsel had stated they did not intend to show that either of these acts caused damage to plaintiff.

The record also discloses that after the jury had retired for its deliberations nine of the jurors voted for plaintiff on the issue of liability and that the other three jurors disagreed with the majority. The nine were then the only jurors who voted on the question of the amount of damages that had been incurred by plaintiff. The other three separated themselves from the nine after the initial vote on the question of liability, retired to another room and did not participate in voting on the question of the amount of damages.

The defendant first contends that the evidence concerning (a) the improper staff, (b) the improper prescription of medicine, (c) failure to do a colostomy at the time of the second operation, and (b) failure to perform a double-barreled colostomy at the fourth operation, should have been excluded or, that his motion for a continuance should have been granted, since the plaintiff's amended complaint and deposition had expressly stated that plaintiff relied on the specific acts of negligence, to-

wit: the nicking of the bowel in two places and the leaving of a rubber glove in the abdominal cavity; that the defendant had been led to believe that he had to defend only against these specific acts of negligence until counsel for plaintiff, in his opening statement, abandoned any claim for damages resulting from the alleged specific acts.

In further support of his claim that he was taken by surprise, the defendant asserts that plaintiff is bound by the answers made to the interrogatories that were submitted to her as provided by law.

In answer to Interrogatory No. 1, as to what act or acts of neglect on the part of defendant or his employees are relied upon by plaintiff as constituting an act or acts of alleged neglect causing plaintiff's injuries, the plaintiff refers to the numerous operations and answers specifically that the defendant did not use proper skill in performing a hysterectomy in January and as a result thereof he nicked the plaintiff's bowel in two places, and further, stated that as a result of defendant's lack of skill plaintiff was forced to undergo further operations, and further that defendant did not have a qualified nurse to assist in surgery and that at the time of the operation a portion of a rubber glove was allowed to remain in plaintiff's abdomen.

We have held that one cannot recover for acts of negligence not alleged in

his complaint, City of Phoenix v. Green, 49 Ariz. 376, 66 P.2d 1041; Kingsbury v. Christy, 21 Ariz. 559, 192 P. 1114. It is elementary that a party pleading negligence specifically is limited to the grounds specifically pleaded. Pacific Greyhound Lines v. Uptain, 81 Ariz. 359, 306 P.2d 281.

The general rule is that specific averments in a pleading must be given precedence over general averments regarding the same matter. They are deemed to supplant, to limit and control general allegations. Thus, general averments of negligence followed by enumeration of the specific acts of negligence relied upon are controlled by such averments of specific acts, and the pleader is confined in his proof within the limits of the specifications of his particular act. *A fortiori* allegations which are mere conclusions of the pleader cannot control specific facts alleged. In Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168 (1934), this court stated:

> "If, in addition to these [allegations of specific acts of negligence], he alleges general negligence also it is immaterial *to the defendant*, for the fact that the specific acts are alleged relieves him from the necessity of explaining or meeting any others."

General negligence and the specific acts in Messinger were, as they were here, alleged in the same count.

Under R.Civ.P. 15(b), 16 A.R.S., of course, issues not raised by the pleadings may nonetheless be tried by consent. But when objection is made, there can be no implied consent and the same rule provides for a continuance to enable the objecting party to meet such evidence. Under the circumstances of this case, and especially in light of plaintiff's answers to Interrogatory No. 1, set out above, the court erred in having denied the continuance and admitting the evidence of other specific acts.

It would have been impossible for instance, for defendant to know in advance that the administration of the drug "prostigmin" would be classed as an act of negligence and he was given no opportunity whatever to prepare a defense on this point. Nor could he have anticipated the attack on the professional qualifications of his assistants. The assisting doctor was out of the state at the time of trial and could not be subpoenaed or reached for a deposition at that late hour in the proceedings.

We do not approve of the conduct of the three jurors who voted against liability in isolating themselves from the nine who favored liability. The assignment of error in this regard is based upon the affidavit of two jurors, who testified to the effect that after the jurors retired and the deliberations on the question of malpractice had resulted in a nine to three

vote in favor of plaintiff, the three who did not vote in favor of the question of defendant's liability retired to an adjoining room and did not vote on the question of the amount of the award. One of the three was the foreman of the jury and he occasionally would go to the door where the nine were deliberating and would inquire as to the progress that was being made. There is good authority which holds that,

> "[T]he fact that a juror who votes against the fixing of liability upon a litigant does not preclude such juror from urging a reduction in the amount of the award. He may well believe that there is no liability, but that, if nine or more be against him, he may be serving the interest of justice and fulfilling the duty imposed by his oath, in attempting to reduce the extent of that liability.

> "A litigant whose cause has been submitted to a jury is entitled to have his cause considered and discussed by all the jurors, and is entitled to have all of them participate in the decision of every question presented to them."

Ralston v. Stump, 75 Ohio App. 375, 62 N.E.2d 293 (1944).

However, we have held that the verdict of the jury cannot be impeached by the affidavits of jurors. Wilson v. Wiggins, 54 Ariz. 240, 94 P.2d 870. See also Hull v. Larson, 14 Ariz. 492, 131 P. 668; Southwest Cotton Co. v. Ryan, 22 Ariz. 520, 199 P. 124; and Brooks v. McDevitt, 40 Ariz. 221, 11 P.2d 826. We are of the opinion, therefore, that the conduct of the jury in this instance cannot properly be assigned as reversible error.

There are other assignments of error, but it does not appear likely that the same questions will arise on retrial and we do not consider them. The court should have continued the trial in the interest of justice upon motion of the defendant, after the opening statement of defendant's counsel.

The cause is reversed and remanded for a new trial.

STRUCKMEYER and JENNINGS, JJ., concur.