[Civ. No. 29429. Second Dist., Div. One. May 10, 1966.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff and Appellant, v. TRANSPORT INDEMNITY COMPANY, Defendant and Appellant.

Schell & Delamer and Fred B. Belanger for Plaintiff and Appellant.

Harold Q. Longenecker and Gerald G. Reppetto for Defendant and Appellant.

LILLIE, J. — Cross-appeals are here presented from a declaratory judgment determining the relative and respective rights and obligations of the parties to this action under policies of insurance issued by them.

The controversy arose under the following circumstances: Ronald Berman, while employed by Western Truck Lines (referred to hereinafter as "Western-Gillette") drove his employer's pick-up truck to the premises of Cutting Edge Supply (Cutting Edge) to pick up a heavy steel blade. An employee of Cutting Edge, one Hendrix, was the operator of a fork lift truck upon which the blade was situated; as the blade was being lowered onto the bed of the truck, it struck and injured the middle right finger of Berman's hand. Berman then filed an action against Cutting Edge, another company, two named individuals and certain Does; Hendrix was not named as a defendant. The case was subsequently settled before trial by Hartford, as Cutting Edge's insurer under a general liability policy, for $4,750. Meantime, Hartford had brought this action against Transport to have it declared that a comprehensive automobile policy issued to Western-Gillette, providing general coverage for that company and any other

person using the pick-up truck with the permission of Western-Gillette, required such company to defend and indemnify Cutting Edge in the action instituted by Berman. (At the time of trial, by stipulation, the complaint was deemed amended to state a cause of action for the recovery by Hartford of the settlement sum.)

Hartford contended that its policy insured Cutting Edge but not its employee Hendrix, whose negligence was said to be the sole proximate cause of Berman's injuries; on the other hand, since Hendrix was using the pick-up truck and since Cutting Edge was alleged to be legally responsible for its permissive use, both were insured under Transport's comprehensive policy which issued, among other reasons, pursuant to section 16451, subdivision (b) of the Vehicle Code then in full force and effect and providing for mandatory coverage of permissive users. It, therefore, relied on the rule that a policy (Transport) which covers the liability of an additional insured (Hendrix) is primary over a policy (Hartford) which covers only the vicarious liability of the employer (Cutting Edge) under the doctrine of *respondeat superior*. Cited in this connection is *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 428 [296 P.2d 801, 57 A.L.R.2d 914]: "Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe. [Citations.]" The trial court took cognizance of the above rule; nevertheless, it concluded that the present case could not be distinguished from *Standard Acc. Ins. Co.* v. *Hartford Acc. & Indem. Co.*, 206 Cal.App.2d 17 [23 Cal.Rptr. 424], where it was held that both policies covered the risk and, accordingly, both were concurrent or primary insurers. It was therefore adjudged that the amount of settlement in the Berman action, including a sum fixed as attorney's fees, be borne equally by Hartford and Transport.

It is Hartford's position on this appeal that vicarious liability should automatically be considered "excess" liability; too, rather than be required in circuitous fashion to institute an action against Hendrix, this court should declare that Transport provided primary coverage for Hendrix to whom Hartford owes no obligation and that it be reimbursed for its payment and costs in the settlement of the Berman suit. Transport's cross-appeal, on the other hand, advances the claim that the trial court erred in failing to prorate the poli-

cies pursuant to the ratio of their basic limits: Since Transport's policy afforded a $10,000 coverage, and Hartford's limit was $50,000 for injuries to one person, the ratio of 1-5 should have been applied.

Because it was further declared in *Continental Casualty* that "as between employer and employe in such a situation, the obligation of the employe is primary and that of the employer secondary" (46 Cal.2d at 429), it must bere be determined whether the liability of Cutting Edge to Berman was predicated on *respondeat superior*. Transport vigorously disputes such claim. In the first place, it says, Hendrix was not named as a defendant nor was he served; second, the complaint alleges negligent control, management and entrustment of the truck on the part of Cutting Edge, there being no such allegation with respect to Hendrix or any other employees of Cutting Edge. As we are authorized to do (Cal. Rules of Court, rule 12), we have ordered the original record transmitted here; it does not fully support the last statement. Paragraph III alleges that "at all times herein referred to the defendants and each of them were the agents, servants and employees of each other and were authorized to act and did act for each other within the scope of their duties under their said employment." Paragraph IV, after reference to plaintiff's presence on the premises at defendant's invitation, then alleges that "at said time and place said defendants so negligently, carelessly and unlawfully controlled, managed and entrusted the work of loading said truck that a heavy piece of steel was caused to fall on plaintiff's right hand. . . ."

 Contrary to Transport's position, it is not necessary that the servant or employee be named in order to state a cause of action against the master or employer. "It is the rule in California . . . that in order to hold the principal liable for the acts of his agent it is not necessary to allege that the agent was negligent. It suffices to allege that the principal was negligent. As stated in *Golceff* v. *Sugarman,* 36 Cal.2d 152, 154 [222 P.2d 665] : ' "In order to state a cause of action against defendant for a wrong committed by his servant, the ultimate fact necessary to be alleged is that the wrongful act was in legal effect committed by defendant. This may be alleged either by alleging that defendant by his servant committed the act, or, without noticing the servant, by alleging that defendant committed the act." ' " (*Alvarez* v. *Felker Mfg. Co.,* 230 Cal.App.2d 987, 997 [41 Cal.Rptr.

514].) ██ If this were not enough to demonstrate the unsoundness of Transport's position, it is further a fact that the pretrial order makes specific reference to Hendrix, his status as a foreman and his particular activities at the time of the accident; and such pretrial order controls where inconsistent with the pleadings. (*Dell'Orto* v. *Dell'Orto,* 166 Cal. App.2d 825, 831 [334 P.2d 97].)

Equally untenable is the further claim by Transport that Hartford paid the settlement on behalf of Cutting Edge only, as is the additional claim that no judgment was secured against Hendrix. The settlement concededly was made in good faith for a fair sum; too, Transport had been notified by Hartford before the filing of the present action that it would not assume the defense of the Berman action, forcing Hartford to do so in its own interests. ██ It is the law that one acting in good faith in making payment, under the reasonable belief it is necessary to his protection, is entitled to subrogation. (*Employers etc. Ins. Co.* v. *Pacific Indem. Co.,* 167 Cal.App.2d 369, 379-380 [334 P.2d 658].) Accordingly, Transport may not validly argue, as it does, that ''Equitable principles of subrogation would never allow Hartford to recover or recoup against Hendrix for a settlement made in behalf of Cutting Edge, where there was not even an allegation of negligence on the part of Hendrix.''

In view of the above discussion, it becomes unnecessary to consider the subsidiary claim (briefly asserted) that the Berman complaint stated a cause of action only for concurring negligence between several joint tortfeasors, to wit, Cutting Edge and the named individual defendants. Finally, since Transport seems to concede, as it must, that the loading operation in suit constituted a ''use'' of the vehicle within the meaning of the law (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.,* 106 Cal.App.2d 630, 635 [235 P.2d 645]; *Industrial Indem. Co.* v. *General Ins. Co.,* 210 Cal.App.2d 352, 356-357 [26 Cal.Rptr. 568]), we pass to the *Standard Accident* case (206 Cal.App.2d 17) which the trial court determined to be controlling. As will be seen, it is clearly distinguishable and supports Hartford's position on each appeal.

██ The trial court found that Hendrix was permissively using the truck and that the vehicle was then owned by Western-Gillette. Transport's policy, of course, covered such permissive use—since *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359], as a matter of public

policy the provisions of section 415 (now §§ 16450-16455) of the Vehicle Code are to be read into every automobile liability policy in this state. █ Unlike its policy in *Standard Accident,* under its "Other Insurance" clause in the instant case, Hartford's policy is expressly stated to be excess where the accident involved a car not owned by their insured: ". . . provided, however, the insurance under this policy with respect to loss arising out of . . . the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." The related clause in the Transport policy (Clause 11), however, does not contain an applicable provision, simply stating that "If there is other insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable limits of all such other insurance." It is undisputed that Transport provided "other valid and collectible insurance" and that the truck being used (i.e., being unloaded) at the time of the accident was not owned by Cutting Edge. Clearly, therefore, Transport under its comprehensive liability policy issued to Western-Gillette was the primary insurer. (*Pacific Indem. Co.* v. *Universal etc. Ins. Co.,* 232 Cal.App.2d 541 [43 Cal.Rptr. 26].) Indeed, it has been uniformly held that where two policies contain an "excess" clause, the one specifically providing that coverage shall be excess as to liability occasioned by a nonowned automobile must be deemed excess coverage over other collectible insurance. (*Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.,* 221 Cal.App.2d 150 [34 Cal. Rptr. 406]; *Firemen's Ins. Co.* v. *Continental Cas. Co.,* 170 Cal.App.2d 698 [339 P.2d 602].) Thus, in *American Auto. Ins. Co.* v. *Republic Indem. Co.,* 52 Cal.2d 507, 513 [341 P.2d 675], it is stated: "The only construction of the 'other insurance' clause under which both its parts will be meaningful is that the *excess* provision alone controls in every situation which falls within its terms, such as when a person is driving the car of another and both the driver and the owner have insurance, and that the *prorate* provision alone governs in all other situations, for example, when more than one policy has been issued to the same person. When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy."

As between the two parties to this action, therefore, we conclude that Transport is the primary insurer and Hartford is

the excess insurer. By reason of the above determination, of course, it necessarily follows that the points made on Transport's cross-appeal cannot be sustained.

The judgment is reversed with directions to the trial court to amend its conclusions of law and enter judgment declaring the relative and respective rights and obligations of the parties to this action in accordance with the views expressed in this opinion.

Wood, P. J., and Fourt, J., concurred.