442 P.2d 851

Gilbert GORSKI et al., Appellants,

v.

J. C. PENNEY COMPANY et al., Appellees.

No. 8602.

Supreme Court of Arizona,
In Division.
July 3, 1968.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for appellants.

Kramer, Roche, Burch & Streich, by Dan Cracchiolo, Phoenix, for appellees.

McFARLAND, Chief Justice:

This case is before us on an appeal from the Superior Court. Reversed with instructions.

Plaintiff, Gilbert Gorski, sued defendant J. C. Penney Co. and its employee, Tom Perrodin, for personal injuries alleged to have been caused by defendants' negligence. The case was submitted to a jury of twelve at 4:52 p. m. on a Friday afternoon. At 11:30 p. m. that night a verdict for $7,500, signed by nine jurors, was returned in favor of plaintiff. The court entered judgment, discharged the jury, and adjourned. The judge then invited the jurors into his chambers for a social chat, as was his custom. It was then revealed for the first time that a female juror named Poulson had withdrawn from the deliberations of the jury (though she had remained in the jury room) at sundown, because her religion forbade her to work on her "sabbath" which began Friday at sundown.

Based on this information, motions for a new trial and for judgment n. o. v., with Mrs. Poulson's affidavit attached, were filed by defendants. A motion to strike the affidavit was filed by plaintiff. These motions were denied by a minute entry. Subsequently, at defendants' request, a hearing was held, and Mrs. Poulson's sworn testimony was received. Defendants then filed a motion to reconsider their motions. After studying the transcript and the authorities presented, the trial judge reversed his position and granted the previously-denied motion for a new trial. From this order plaintiff appeals.

The facts show that Mrs. Poulson, before withdrawing from the discussion, voted against awarding any judgment to plaintiff. After sundown, she sat with the rest of the jurors, but took no part in the discussion and did not again vote. While she was thus withdrawn, at least nine jurors voted for plaintiff. When the discussion passed to the question of how large the judgment should be some one suggested that the three who were against the judgment should be consulted, and it was then that Mrs. Poulson informed the other jurors that she was sitting in her chair praying instead of listening to the discussion.

The Arizona Constitution, Article II, Sec. 23, A.R.S., provides:

"The right of trial by jury shall remain inviolate, but provision may be made by law * * * for a verdict by nine or more jurors in civil cases in any court of record, * * *"

Because of this mandate, defendants argue that even though nine jurors may reach a binding verdict, defendants are entitled to have all twelve jurors join in the deliberations. Defendants argue that it is within the realm of possibility that, had Mrs. Poulson continued to take part in the deliberations, she might have prevented the verdict from being so high, and even might have persuaded the other jurors to find for defendants. They quote Johnson v. Holzemer, 263 Minn. 227, 116 N.W.2d 673, to the effect that:

"* * * While it is true that [by statute], after 6 hours of deliberation by a jury panel, the court may accept the concurring opinion of five-sixths of the members of the panel in civil cases, this does not mean that the deliberation of the panel leading up to such a verdict may be conducted by less than a jury of 12."

The Johnson case, supra, was one in which a juror became ill and had to be removed from the jury room before a verdict was reached. It is easily distinguishable from the instant case by the fact that the court failed to follow the Minnesota statutes which specifically set out the procedure to be followed. Arizona has no such statute.

We are in full agreement with the principle that the parties are entitled to the deliberations of all twelve of the jurors. However, evidence of events occurring, or learned about, in the jury room may not be incorporated into affidavits of jurors for the purpose of impeaching their verdicts, nor can this rule be overcome by developing the facts by testimony of the same jurors at a special hearing held for that pur-

pose. The rule against a juror's impeaching a verdict is founded upon a solid principle of law. Lord Mansfield settled this rule for the English Common Law in 1785 in Vaise v. Delaval, 1 T.R. 11. This Court has consistently followed that rule. As early as 1913, in Hull v. Larson, 14 Ariz. 492, 131 P. 668, we said, quoting from Thomp. & M.Jur., sec. 414:

"* * * 'Upon the ground of public policy, the courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, or to explain it, * * * or that they agreed on their verdict by average, or by lot.' * * *"

We reaffirmed this principle in Southwest Cotton Co. v. Ryan, 22 Ariz. 520, 199 P. 124.

In Wilson v. Wiggins, 54 Ariz. 240, 94 P.2d 870, affidavits of several jurors were presented to the trial court in support of a motion for a new trial. The court struck the affidavits and denied the motion. In affirming, we quoted with approval the following language from the opinion of the United States Supreme Court in McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L. Ed. 1300:

"* * * let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

* * * * * *

"And, of course, the argument in favor of receiving such evidence is not only very strong, but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' * * *"

Despite the apparent harshness of this well-established rule, it is nevertheless clear that attorneys have complete protection against the kind of misconduct present in the instant case, by ascertaining, on voir dire, whether or not any juror has religious scruples or other reasons why he cannot deliberate as long as it is necessary to either reach a verdict or be discharged for inability to agree.

Defendants cite 53 Am.Jur. 776 for the proposition that only the jurors who consent to the verdict are barred from impeaching it. We have held otherwise in Southwest Cotton Co. v. Ryan, 22 Ariz. 520, 199 P. 124. In that case, we also cited Hull v. Larson, 14 Ariz. 492, 131 P. 668, for the proposition that even a "quotient verdict" cannot be shown by a juror's affidavit, and that relief, if any, must come by legislation.

In Hall v. Delvat, 95 Ariz. 286, 389 P.2d 692, an assignment of error was based upon an affidavit of two jurors to the effect that three jurors, after voting against liability, *retired to an adjoining room*, took no further part in the deliberations, and did not vote on the question of the amount of the award. In passing upon the question of proof of these facts by affidavit, we said:

"We do not approve of the conduct of the three jurors who voted against liabil-

ity in isolating themselves from the nine who favored liability. * * * There is good authority which holds that,

> " '[T]he fact that a juror who votes against the fixing of liability upon a litigant does not preclude such juror from urging a reduction in the amount of the award. He may well believe that there is no liability, but that, if nine or more be against him, he may be serving the interest of justice and fulfilling the duty imposed by his oath, in attempting to reduce the extent of that liability.'

" 'A litigant whose cause has been submitted to a jury is entitled to have his cause considered and discussed by all the jurors, and is entitled to have all of them participate in the decision of every question presented to them.' Ralston v. Stump, 75 Ohio App. 375, 62 N.E.2d 293 (1944).

"However, we have held that the verdict of the jury cannot be impeached by the affidavits of jurors * * *"

■ The instant case involves less irregularity than Hall v. Delvat, supra, for here the juror sat with the rest of the jurors, though she took no part in the discussion, and did not vote after her first vote against liability. In our opinion, Hall v. Delvat controls the decision in the instant case.

Order reversed with instructions to reinstate the original judgment on the verdict.

STRUCKMEYER and LOCKWOOD, JJ., concur.