735 P.2d 445

The ARIZONA PROPERTY AND CASU-
ALTY INSURANCE GUARANTY
FUND, a subdivision of the Department
of Insurance of the State of Arizona,
Plaintiff-Appellant,

v.

William B. HELME, M.D. and Jane Doe
Helme, husband and wife; Neurological
Surgeons, P.C., an Arizona corporation;
Glenda Worsham, surviving spouse of
Linward A. Worsham, and Chanita Lin
Engelke and Choya Lynn Worsham,
surviving children of Linward A. Wors-
ham, Defendants-Appellees.

No. 1 CA–CIV 7644.

Court of Appeals of Arizona,
Division 1, Department B.

May 8, 1986.

Holloway & Thomas, P.C. by Benjamin C. Thomas and Grant H. Goodman, Phoenix, for plaintiff-appellant.

Leonard & Clancy, P.C. by Kenneth P. Clancy, Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Presiding Judge.

This appeal arises from an action for declaratory relief, filed by the Arizona Property and Casualty Insurance Guaranty Fund (Fund) against William B. Helme, M.D., his wife, Neurological Surgeons, P.C. (NSPC) and the plaintiffs in an underlying medical malpractice suit for wrongful death.

Drs. Helme and Eisenbeiss and their corporation, NSPC, obtained an insurance policy for professional negligence from Imperial Insurance Company of California. This policy was in effect when the allegedly negligent acts giving rise to the malpractice suit occurred. Imperial Insurance subsequently became insolvent, and the Fund assumed responsibility for adjusting and defending claims under its policies, pursuant to A.R.S. § 20–661 *et seq.*

On April 26, 1975, Linward Worsham sustained serious injuries from an automobile accident. He was ultimately transferred to Good Samaritan Hospital in Phoenix, where he underwent a neurological consultation conducted by Dr. Eisenbeiss and sur-

gery performed by Dr. Helme. Drs. Eisenbeiss and Helme were each agents, employees and shareholders of NSPC at this time.

For purposes of this appeal, the facts are undisputed that Drs. Eisenbeiss and Helme failed to review x-rays of Linward Worsham's spine during the course of the neurological consultation and subsequent surgery. These x-rays would have revealed a fracture dislocation of a cervical vertebra, which resulted in Mr. Worsham's quadriplegia and ultimate death.

In April of 1977, before Mr. Worsham died, he and his wife, Glenda Worsham, instituted a medical malpractice suit alleging that numerous doctors and hospitals, including Dr. Eisenbeiss and NSPC, had negligently and proximately caused Linward Worsham's injuries by failing to immobilize his cervical area. After Mr. Worsham died, his statutory heirs, including Glenda Worsham and her two children, filed an amended complaint alleging wrongful death. Dr. Helme was never named individually or served as a defendant in this litigation. Discovery ensued, and the case was set for trial on March 31, 1981.

The Fund obtained defense counsel for Dr. Eisenbeiss and NSPC pursuant to the policy with their insolvent insurer. During settlement negotiations, the plaintiffs asserted the purportedly negligent acts of Drs. Eisenbeiss and Helme were two separate "occurrences," laying the foundation for two separate claims under the Imperial Insurance policy. Such a construction of the policy would lead to a total, possible recovery of $199,800 from the Fund under A.R.S. § 20–667. In contrast, the Fund maintained the omissions of the two doctors constituted only one "occurrence" under the policy and thus supported only one claim for $99,900.

As a result of the Fund's position on the definition of "occurrence," Drs. Helme and Eisenbeiss feared personal liability for the malpractice claim and retained personal counsel. In a letter to the Fund, dated March 18, 1981, counsel for the plaintiffs, stated:

> ... We have ... had some preliminary discussions with personal counsel for Dr. Eisenbeiss and his group. They are concerned about personal exposure for sums in excess of the $100,000 coverage you claim to have. They believe, and we believe, that there is $200,000 in coverage. There is some discussion (preliminary only) that a stipulated judgment be entered in the amount of $350,000 in exchange for a release of any personal liability of Dr. Eisenbeiss or his group.
>
> ....
>
> It seems clear, however, that there will have to be a judicial determination made to resolve the issue you and I disagree on—i.e., whether the Fund has $100,000 or $200,000 in coverage in this situation.

On April 22, 1981, Drs. Eisenbeiss and Helme, and NSPC executed a written agreement, stipulating that the doctors were independently and separately negligent and that their negligent omissions constituted two separate "occurrences" as defined by their insurance policy. These defendants further stipulated to a judgment for $199,800, the equivalent of a recovery for two claims. In consideration for these stipulations, the plaintiffs joined in a covenant not to execute against Drs. Eisenbeiss and Helme, and NSPC. The Fund neither authorized, nor took part in these settlement negotiations.

After settling the claim against Dr. Eisenbeiss for $99,900, the Fund filed an action for declaratory relief concerning its obligation to pay the second claim under the Imperial Insurance policy and A.R.S. § 20–667. Dr. Helme, NSPC and plaintiffs in the underlying action were named as defendants. Additionally, the Fund argued that Dr. Helme and NSPC breached their express contractual duty of cooperation and their implied duty of good faith by entering into the settlement agreement without the Fund's authorization. Cross-motions for summary judgment were filed, and on September 29, 1983, the trial court denied the Fund's motion and granted judgment in favor of the present defendants-appellees.

On appeal, the Fund raises the following issues:

(1) Whether plaintiffs in the wrongful death suit adequately pled their complaint against Dr. Helme, individually, and against NSPC, for Dr. Helme's allegedly negligent acts;

(2) Whether the insurance policy definition of "occurrence," as it relates to the number of claims, is ambiguous so as to necessitate construction based upon common law;

(3) Whether plaintiffs in the wrongful death suit alleged one, or alternatively two, "covered claims" under A.R.S. § 20–661;

(4) Whether the Fund abandoned Dr. Helme's and NSPC's defense in the wrongful death suit so as to justify their unauthorized stipulations to the judgment; and

(5) Whether Dr. Helme and NSPC breached their express duty of cooperation and implied duty of good faith, by executing the settlement agreement, such that plaintiffs in the wrongful death suit may not recover from the Fund for their liability.

## ADEQUACY OF COMPLAINT IN STATING CAUSE OF ACTION AGAINST DR. HELME AND NSPC FOR DR. HELME'S NEGLIGENCE

Appellees contend that, under the law of respondeat superior, a complaint need only name the master to plead adequately against the servant as an individual. The Fund responds in asserting that appellees may not rely upon a general allegation of NSPC employee negligence to encompass Dr. Helme's acts, because they narrowed their allegations by specifically pleading the negligence of Dr. Eisenbeiss alone. In our opinion, neither assertion adequately addresses the issue.

■ A complaint must specifically name those individuals whom the plaintiff intends to sue personally, so as to provide sufficient notice to such individuals that they must stand ready to defend the litigation. *Adams v. School Board*, 53 F.R.D. 267 (M.D.Pa.1971) (where only school board named in caption of complaint, individual board members were not defendants). *See*

*Kepner v. Western Fire Insurance Co.,* 109 Ariz. 329, 509 P.2d 222 (1973) (complaint serves notice function). Here, Dr. Helme was not named individually in the complaint or amended complaint. Plaintiffs in the underlying, wrongful death suit thus failed to state a cause of action against Dr. Helme in his personal capacity.

■ In contrast, under the law of respondeat superior as it regards pleading practice, a complaint that generally alleges the employer's negligence need not specifically identify each employee involved to hold the employer liable for such employees' negligent acts. 57 C.J.S., *Master and Servant,* § 614 (1948 & Supp.1985); *Hartford Accident & Indemnity Co. v. Transport Indemnity Co.,* 242 Cal.App.2d 90, 51 Cal.Rptr. 168 (1966); *Vendrell v. School District,* 226 Ore. 263, 360 P.2d 282 (1961); *Wiebe v. Seely,* 215 Ore. 331, 335 P.2d 379 (1959); *Dillard v. Kern County,* 23 Cal.2d 271, 144 P.2d 365 (1943). Here, the wrongful death complaint stated:

... Defendant Neurological Surgeons, P.C., acting through its agents and/or servants and/or employees caused an event to occur in the State of Arizona which is the subject of this lawsuit.

To require more in terms of specific employee names would be to contradict the great weight of authority. The Fund cites *Hall v. Delvat,* 95 Ariz. 286, 389 P.2d 692 (1964), for the proposition that specific pleadings as to negligent conduct limit and control general averments of negligence. The rule set forth in *Hall* is, however, inapposite to the present case. In *Hall,* as in other authorities cited by the Fund, the plaintiff was barred from proving negligent acts not mentioned in the complaint. These authorities have no bearing upon the wrongful death complaint here, as the plaintiffs never attempted to prove incidents of negligence other than a failure on the part of various defendants, including employees of NSPC, to review x-rays of Linward Worsham's spine.

■ As the Fund indicates, the purpose of pleadings is to give notice of opposing claims. *Horne v. Timbanard,* 6 Ariz. App. 518, 434 P.2d 520 (1967). We hold

that NSPC and the Fund had sufficient notice both that the alleged negligent conduct was a failure to look at x-rays and that NSPC would be held responsible for this particular omission on the part of Dr. Eisenbeiss, as well as any other NSPC employee who similarly fell below the requisite standard of care. Thus, for the purpose of establishing the liability of NSPC, the plaintiffs adequately alleged the purportedly negligent omissions of Dr. Helme.

## AMBIGUITY OF "OCCURRENCE" UNDER THE IMPERIAL INSURANCE POLICY AND THE NUMBER OF COVERED CLAIMS

■ The Imperial Insurance policy subject to our scrutiny on appeal limits the company's liability as follows:

> The limit of liability stated in the Declarations as applicable to 'each Occurrence' is the limit of the Company's liability for all damages arising out of each occurrence covered hereby.
>
> ... The inclusion of more than one person or entity as Insured in the Declarations or added by endorsement shall not operate to increase the limits of the Company's liability.

The policy then defines the word "occurrence" in providing:

> The term 'occurrence' means any incident, act or omission, or *series of related incidents, acts or omissions* resulting in injury, sickness or disease, including death resulting. therefrom, to one or more persons.

(emphasis added). The Fund maintains the meaning of this language, taken as a whole, is plain and unambiguous as applied to the case at bar. We agree.

We will decline to look beyond the four corners of a contract to construe its language where such language reasonably contemplates one clear and unambiguous interpretation. *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 566 P.2d 1332 (1977). Moreover, where the intent of contracting parties is clear, as reflected by both their language, and all contemporaneous circumstances, such language is not ambiguous. *Smith v. Melson, Inc.*, 135

Ariz. 119, 659 P.2d 1264 (1983). Here, if the negligent omissions alleged in the original suit constitute a "series of related omissions," they combine to describe only one "occurrence" under the Imperial Insurance policy. We hold the phrase "series of related omissions" is clear and unambiguous in the present context.

The wrongful death complaint asserted only one type of negligent conduct as it pertained to the continuous and ongoing patient care performed by various parties. As set forth by the policy in the above-quoted language, the number of insured doctors who failed to review x-rays of Linward Worsham's spine is irrelevant to determining the liability limit. That only one injury—death—was incurred also warrants no consideration in that limiting the policy's liability to coverage of only one claim depends upon whether we can reasonably sever the doctors' omissions so that they do not constitute a "series of related omissions." We are unable to hold the omissions in question were severable under the policy definition of "occurrence."

The asserted omissions of Drs. Eisenbeiss and Helme were intimately related. They were identical and took place as part of a continuous, neurological consultation. That each doctor failed to check x-rays does not suffice to rebut the Fund's position these omissions ultimately composed one, ongoing omission. This single omission was apparently the proximate cause of Mr. Worsham's injuries, as it was uninterrupted by any superceding, intervening, "unrelated" incidents that may otherwise have supplied grounds for successfully alleging a second "occurrence" under the policy.

Because we hold that plaintiffs in the wrongful death action pled only one "occurrence" under the Imperial Insurance policy, we conclude they similarly presented only one "covered claim" pursuant to the Fund's obligations under A.R.S. § 20–667. Thus, the full amount of possible recovery against the Fund for the combined negligent omissions of Drs. Eisenbeiss and Helme, and NSPC, was $99,900.

## ABANDONMENT AND THE INSUREDS' BAD FAITH

■ Although our previous conclusions effectively grant the Fund's requested relief, we briefly reach the issues regarding its asserted abandonment of Dr. Helme and NSPC, as well as Dr. Helme's and NSPC's alleged breaches of their contractual duties to exercise good faith and cooperation.

As we discussed above, Dr. Helme was never named as a party to the wrongful death action. He was in no danger of incurring personal liability. This fact alone compels the conclusion that the Fund could not have abandoned Dr. Helme.

As to the Fund's conduct toward NSPC, the record on appeal provides no evidence the Fund ever denied its obligation to conduct NSPC's defense or to provide coverage. Indeed, the only dispute between the Fund and its insureds in the wrongful death suit related to the *amount* of coverage rather than the duty to provide coverage.

■ These facts fall far short of establishing the Fund's abandonment of Dr. Helme and NSPC. *See Sargent v. Johnson*, 551 F.2d 221 (8th Cir.1977). Appellees' corresponding argument that the Fund acted in bad faith is also without merit, as the circumstances indicate the Fund was, at all times, ready, willing and able to conduct a defense and extend coverage, up to its liability limit, in the underlying matter. *Id.*

■ In contrast, we agree with the Fund's argument that Dr. Helme and NSPC breached their express duty of cooperation and their implied duty of good faith in settling the wrongful death suit without authorization or participation by the Fund.

The Imperial Insurance policy in question provided in pertinent part:

1. Assistance and Cooperation of Insured....

The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlement, securing and giving evidence, obtaining attendance of witnesses, and in the conduct of suits. *The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense.*

(emphasis added).

By executing the settlement agreement without the Fund's permission or acquiescence, Dr. Helme and NSPC breached the express duty of cooperation set forth unequivocally in this portion of their insurance policy.

■ We note as well that the law imposes a duty of good faith upon all contracting parties "so that neither party may do anything that will injure the rights or interests of other parties to the agreement." *Diagnostic Laboratory, Inc. v. PBL Consultants*, 136 Ariz. 415, 419, 666 P.2d 515, 519 (App.1983). Dr. Helme and NSPC agreed to the stipulated judgment sought by Mr. Worsham's statutory heirs to avoid the possibility of personal liability beyond the policy limit of $99,900. The covenant not to execute against Dr. Helme and NSPC was the *quid pro quo* of this transaction.

■ Such unauthorized dealings between the insured and the complaining parties was collusive and highly prejudicial to the Fund. Such bad faith conduct amounts to a breach of the insured's implied duty of good faith. Hence, even if we agreed with appellees that two covered claims were alleged in the complaint, the bad faith conduct of the insureds, as well as their breach of an express duty of cooperation, would bar appellees' recovery for Dr. Helme's negligence under the insurance policy.

The judgment of the trial court is accordingly reversed and the matter remanded with instructions to enter judgment in favor of the Fund on its complaint for declaratory relief.[1]

CONTRERAS, J., concurs.

---

1. Because the Fund sought only to limit its liability to the $99,900.00 it has already tendered to the original plaintiffs, for Dr. Eisen- beiss' negligence, we make no determination of whether the bad faith dealings of Dr. Eisenbeiss would have further limited that liability.

CORCORAN, Judge, dissenting in part:

After reaching conclusions which "effectively grant the Fund's requested relief," to use the words of the majority, the majority opinion goes on to discuss abandonment and the insured's bad faith. There is no reason to reach this issue since the appeal has been resolved in favor of the Fund. However, since the majority does discuss this issue, some further comments are in order.

The majority concludes that because Dr. Helme was not named as a party in the underlying action, "he was in no danger of incurring personal liability. This fact alone compels the conclusion that the Fund could not have abandoned Dr. Helme." This is an exercise of 20/20 hindsight. The attorneys for the Worshams took the position in the underlying litigation that although Dr. Helme was not named individually as a party defendant, claims could be presented and judgment obtained against him since he and Dr. Eisenbeiss and their corporation, NSPC, were insureds under the policy, and Dr. Eisenbeiss and NSPC were named parties. That issue was not resolved in the underlying litigation and is only resolved *ex post facto* by the majority in this opinion. The Fund and its attorney in the underlying litigation, according to his affidavit, "always stood ready, able and willing to defend Defendants' Eisenbeiss and Neurological Surgeons, P.C." in the underlying litigation. The Fund in its brief puts it a little differently:

> The Fund, at all times in the original proceedings, was ready, willing and able to defend Dr. Eisenbeiss, Neurological Surgeons, P.C., and *Dr. Helme, had he been named in the original action.*

(Emphasis added.)

It is clear that the Fund did not consider that Helme was named in the original action and that there was only one "covered claim." The Fund did not take the position that it would represent Dr. Helme under a reservation of rights or that it would initiate a declaratory judgment action. The Fund's position was unequivocal.

Under the circumstances, I do not agree with the majority that "[b]y executing the settlement agreement without the Fund's permission or acquiescence, Dr. Helme and NSPC breached the express duty of cooperation...."