252 P.2d 791

**BORROW et ux. v. EL DORADO LODGE, Inc. et al.**

No. 5507.

Supreme Court of Arizona.

Jan. 26, 1953.

Supplemental Opinion on Rehearing March 30, 1953.

See 254 P.2d 1027.

Udall & Udall, of Tucson, for appellants.

Darnell, Robertson & Holesapple, of Tucson, for appellees.

LOCKWOOD, Superior Court Judge.

This case arose by an action by Peter P. Borrow and Edith Borrow, husband and wife, for damages for personal injuries alleged to have been suffered by Peter P. Borrow, as the result of burns caused by an explosion caused by the ignition of gasoline fumes while plaintiff Peter P. Borrow was engaged in cleaning a surge tank on the premises owned by the defendant El Dorado Lodge, Inc., a corporation. The defendant Jack Taub was an officer of the corporation.

The matter was tried to a jury, which returned a verdict in favor of plaintiffs and against the defendants in the full amount prayed for, being $45,000. Defendants moved for a directed verdict in their favor at the close of the evidence, which motion was denied, and upon their motion for a new trial the court denied the same, conditioned that the plaintiffs make a remitter of $25,000 from the amount of the verdict, for the reason that the damages were found by the court to be excessive.

Plaintiffs appealed from the order of remittitur, and thereafter defendants filed a cross-appeal based upon the order deny-

ing their motion for an instructed verdict, and upon the order denying the motion for new trial.

For clarity we will hereafter continue to refer to appellants and cross-appellees as plaintiffs, and to appellees and cross-appellants as defendants.

The facts disclosed by the evidence appear as follows:

Plaintiff Peter P. Borrow was employed by M. I. Poze Construction Company as a carpenter and construction foreman during the years 1949 and 1950. In 1949 he was sent to the El Dorado Lodge, a guest ranch near Tucson, Arizona, which was undergoing remodeling, to do some construction work. Among other things plaintiff assisted in building a structure known as a pump-house, which was designed to house the heating and filtration system used to service a swimming pool. In the pump-house the plaintiff constructed what is known as a surge tank, about twelve feet deep by four feet square, with walls extending upward above the floor a short distance, and lined with asphalt and enamel, through which water was pumped for the pool. During the time plaintiff was so working, equipment, including a boiler to heat the water, was installed by a plumbing contractor.

In February of 1950 plaintiff and a helper, one Fimbres, were sent by the M. I. Poze Construction Company to the El Dorado Lodge to repair the surge tank, since asphalt was apparently leaking from it into the swimming pool. Plaintiff and Fimbres went into the pump-house, taking with them brushes and scrapers to scrape the asphalt and enamel off the surge tank. Shortly after they arrived defendant Taub, manager of the Lodge, came into the building and had a conversation with Borrow, during the course of which, according to Borrow's testimony, Taub said: "We have everything ready for you. Everything is shut off ready to go ahead." Borrow further testified that they discussed the boiler or water heater with regard to its improvement in operation, and that Taub showed him some new attachments on it, and he, Borrow, felt the boiler and it was cold. Taub left the building while Borrow and Fimbres scraped the tank for about half an hour, when Taub returned, and another conversation between them ensued. According to Borrow's testimony he told Taub they weren't progressing very well, and suggested the tank should be washed off; that kerosene would help dissolve the asphalt but would leave a bad film; that gasoline would be best to use, as it would leave it clean. According to Borrow, Taub replied, "I don't care what you use. Use anything, so long as you get it off," and then told an employee of the El Dorado Lodge, one Diaz, to get what Borrow and Fimbres wanted, and instructed him to bring them some muriatic acid. Taub left, and about a hour later Borrow went outside, happened to find some gasoline, took

it back, and he and Fimbres used it to dissolve the asphalt in the tank. Diaz was in and out during the time they were working, including the time they were using gasoline, according to Borrow. Electric lights were burning in the building during the time they were working, and after they had washed the tank with gasoline Borrow started to rinse the tank with water from a garden hose, when a blue flame ran from the direction where the boiler was to the tank, there was an explosion at the tank, and Borrow was burned.

Since the cross-appeal goes to the sufficiency of the evidence to submit plaintiffs' case to the jury, we shall examine it first.

Defendants in their cross-appeal assign three errors, based upon five propositions of law. Briefly, they are: the court erred in (1) excluding evidence of the interest of the witness Don F. Schafer for the reason that the excluded evidence would show or tend to show said witness was employed by one having a direct financial interest in the litigation, and thus have a direct bearing upon the weight and credibility of the testimony; (2) denying defendants' motion for directed verdict, motion for judgment in accordance therewith, and motion for new trial, for the reason that there was a total failure of proof of actionable negligence on the part of defendants or either of them; and (3) denying defendants' motion for new trial, for the reason it appeared by a fair preponderance of the evidence that the negligence of plaintiff Borrow was a contributing proximate cause, if not the sole cause, of his injuries.

Counsel for defendants urge that they should have been permitted to elicit from the witness Schafer on cross-examination that he was an employee of the Arizona Industrial Commission, since the Commission, under Section 56–949, A.C.A.1939, had a direct financial interest in the outcome of the litigation, and such interest might be taken to affect the credibility of the witness. In support of such position he cites cases where the witness was a physician, adjuster or attorney employed by an insurance company, and particularly stresses the ruling of the court in Majestic v. Louisville & N. R. Co., 6 Cir., 1945, 147 F.2d 621. In the latter case, a personal injury action, the plaintiff was employed by the United States, and produced witnesses also so employed. The Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., contains a provision for repayment of compensation in case of recovery by the claimant from a third person similar in effect to the provisions of Section 56–949, supra. The Circuit Court upheld the trial court's admission of testimony on the part of plaintiff's witnesses, adduced by the defendant, that they were employees of the United States Government, which had some interest in the outcome of the litigation, as tending to affect the credibility of the witnesses.

█ In this case the court excluded similar testimony, stating clearly his reasons for exercising his discretion in a mat-

ter which does not go to the actual merits of the case—that the danger of arousing bias and prejudice on the part of the jury was far greater than the slight assistance such testimony might give the jury in evaluating the credibility of the witness. It is obvious from a reading of the testimony of the witness Schafer that while some of his testimony was favorable to the plaintiff, some of it was also favorable to the defendants. In view of all the circumstances we believe that the error, if any, in refusing to permit defendants to elicit from Schafer that he was an employee of the Industrial Commission, has not affirmatively been shown to be prejudicial to defendants, and thus is not a basis for reversal herein. Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30; Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734.

The second assignment of error presents a far more serious question, since it is directed to the vital factor of plaintiffs' case—whether or not there was any actionable negligence shown.

Counsel for defendants quite correctly states the law that a possessor of premises is not the insurer of the safety of business invitees coming upon his premises, but is only required to exercise ordinary care to maintain the premises in a reasonably safe condition. Certainly it is equally true that such an owner is entitled to assume that the invitee will perceive that which is obvious to him upon the ordinary use of his own senses, and that the owner is not required to give the invitee notice or warning of an obvious danger existing on the premises. However, plaintiff's position was that when the owner of the premises, knowing the work which plaintiff was to do, and the manner in which he might do it, made assurances that the premises were in safe condition therefor, plaintiff had a right to rely on such assurances without making an independent investigation to ascertain their correctness, unless it was reasonably apparent to him by the use of his ordinary senses that they were not. We believe that both defendants' and plaintiffs' propositions of law as above stated are correct. Restatement of the Law, Torts, Sec. 343. It then remains to be ascertained whether plaintiffs sustained the burden of proof of negligence on the part of defendants, to such an extent that the case should have been submitted to the jury.

Plaintiff Borrow's testimony was that he was a carpenter and construction foreman; that he was familiar with the construction of the surge tank and the pump-house, which he had helped to construct; that he knew that the pump-house contained various items of equipment for the purpose of pumping, filtering and heating water for the swimming pool, including a gas heater or boiler which was operated by natural gas; that he was not familiar with the operation of the equipment, although he knew its general purpose; that the electric light hanging from the wall was burning

when he arrived; that shortly thereafter Taub came into the pump-house and said, "Everything is shut off ready to go ahead; everything was prepared last night"; that Taub showed plaintiff some improvements made on the water heater, and that plaintiff touched the heater, and it was cold; that he didn't see anything about it to indicate the pilot lights were on; that Taub left the building while plaintiff and his helper worked, and returned about a half hour later, when plaintiff told him they "weren't doing very good", and that the asphalt which was being scraped off the tank should be washed off, and that kerosene would dissolve it and help wash it off but would leave a film, and that gasoline would be the best thing to use, to which Taub replied, "I don't care what you use; use anything so long as you get it off," and told defendant's employee, who was a gardener and maintenance man, to get whatever plaintiff wanted. Plaintiff's evidence further was that he went outside to get something, found a can of gasoline, brought it into the pump-house, and used it to dissolve the asphalt and wash it off; that thereafter an explosion occurred, a flame coming from the direction of the heater and igniting gasoline fumes at the tank, burning plaintiff.

Under cross-examination plaintiff admitted he had made no investigation to see whether "everything was off" before he used the gasoline, but reiterated he believed from Taub's assurance that everything but the electric light had been "shut off" in the pump-house.

Defendants' counsel argues that plaintiff was an experienced construction man, and should therefore have been familiar with the working of the water heater; that plaintiffs' witness Bell testified that the pilot lights would be readily visible to anyone who looked for them, and their illumination could be seen at a distance of 10 to 12 feet. However, the same witness stated, "You could see a slight amount of illumination if you were determined to look for it." From the testimony the jury might have drawn one of two conflicting inferences as to whether plaintiff Borrow, when he examined the water heater, could have known the pilot lights were still burning. However, if different inferences as to the ultimate facts may be drawn from evidentiary facts, we must accept the inference drawn by the jury. First Nat. Bank of Winslow v. Osborne, 39 Ariz. 107, 4 P.2d 384; Daily Mines Co. v. Control Mines, Inc., 59 Ariz. 138, 124 P.2d 324; Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952.

It therefore appears to us from the record that there was reasonable evidence on the part of the plaintiff, if believed by the jury, to establish plaintiff's contention that he was a business invitee upon the premises of defendants, and that defendants, through Taub, assured plaintiff the premises were safe to perform the

work he was to do, and that plaintiff could not reasonably have known that they were not, under all the circumstances.

Hence the trial court properly denied defendants' motions for a directed verdict, and judgment thereon, made on the ground that there was a failure of proof of actionable negligence on the part of defendants, and for a new trial, made on the ground that it appeared by a fair preponderance of the evidence that negligence on the part of the plaintiff Borrow was a contributing or sole cause of his injuries, and properly submitted the case to the jury for its determination.

█ The case having properly been submitted to the jury in our opinion, we will examine the plaintiffs' appeal from the order of the trial court denying defendants' motion for new trial, conditioned that plaintiffs make remitter of $25,000 from the verdict, finding the damages assessed by the jury to be excessive.

Section 21–1403, A.C.A.1939, specifically authorizes the trial court to order a remitter "within such time as may be fixed," if it deems the damages awarded to be excessive, and to condition the granting or denying of a new trial upon such remitter. In this case the verdict returned was for the full amount prayed for in the plaintiffs' complaint. Plaintiffs alleged in the complaint that they believed plaintiff Borrow had "suffered permanent internal injuries" in addition to other injuries, and attempted to prove a permanent kidney ailment from which he had suffered and had been put to much expense. The testimony with regard to this ailment was afterward ordered stricken as incompetent, and the jury properly instructed to disregard it. Plaintiff's own evidence, that he had returned to work at a wage not much less than he received before the accident, and other testimony considering the probable extent and nature of any disability resultant from the accident, was such that the trial court might readily have believed that a verdict for the full amount prayed for was excessive, when taken into consideration with failure of plaintiff to prove permanent internal injuries. Under such circumstances the trial court did not abuse its discretion in ordering a remitter of $25,000.

Judgment affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.

Justice UDALL, having disqualified himself, the Hon. Lorna E. LOCKWOOD, Judge of the Superior Court of Maricopa County, participated in his stead in the determination of this appeal.