. 371 P.2d 594

Joel Ann SISK, a minor, by her guardian ad litem, Claude N. Sisk, and Claude N. Sisk, individually, Appellants,

v.

James N. BALL and Elnore Ball, husband and wife, Appellees.

No. 6733.

Supreme Court of Arizona,

In Division.

May 16, 1962.

Norman Herring, Sedona, and Stauffer & Stauffer, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, Tucson, for appellees.

BERNSTEIN, Chief Justice.

Appellant (hereinafter called plaintiff) appeals from an adverse judgment rendered upon a jury verdict in an action against the appellee (defendant) for personal injuries. In November, 1955, plaintiff, then a girl of 15 years of age, was struck by defendant's car while crossing Oracle Road in Tucson. At the close of the trial, wherein the issues of negligence of the defendant, contributory negligence of the plaintiff, and "last clear chance" by the defendant were raised, the jury returned a verdict in favor of the defendant and against the plaintiff on her complaint.

Plaintiff sets forth 16 assignments of error, alleging that the testimony upon which the verdict was based is contrary to physical facts; that the court erred in giving certain instructions and refusing to give others; that the court influenced the jury by unduly emphasizing the defendant's case while giving the instructions to the jury by repeatedly using the phrase "you must return a verdict for the defend-

ant;" and that the verdict was influenced by misconduct of defendant's counsel during his argument of the case. We will consider the assignments in this order.

■ Plaintiff argues that the verdict cannot be sustained because defendant's evidence on the issue of "last clear chance" is incredible and contrary to physical facts. The evidence, taken in the light most favorable to the defendant, who prevailed below, showed that the plaintiff and a 17 year old companion saw the car of the defendant and another car approaching from the north as they started to cross from east to west across the east half of Oracle road. After covering a distance of approximately 40 feet the girls paused briefly on the cross-hatched center strip of the road then the plaintiff started running across the west half of the road without again looking to the north. The plaintiff's companion remained on the center strip. The plaintiff ran a distance of approximately 35 feet before the defendant's car struck her.

The defendant's testimony that he saw the girls leave the east side of the road when he was approximately 200 feet north of them appears to be improbable in view of his admitted speed of 35 to 45 miles per hour, and the relative distance that would have to be traversed on foot by the plaintiff to reach the point of impact. However, from the testimony of the defendant and that of Mr. Turner, whose car was in the south-bound lane nearest the center strip and about one car's length behind the defendant's, together with the physical evidence of tire marks beginning 70 feet from the point of impact, the jury could have found that the defendant first observed the plaintiff run from her position of safety on the center strip when he was about 70 feet (or a little farther, allowing for his reaction time) from the point of impact. It does not appear incredible that the plaintiff could have covered the 35 feet from the center strip to the point of impact while the defendant, in a car with the brakes applied and coming to a stop covered somewhat more than 70 feet. We therefore reject plaintiff's assignments of error dealing with this point.

We have not considered the plaintiff's assignment of error concerning the instruction on contributory negligence. For reasons discussed hereafter, the case must be retried, and this point will be controlled by the principles set out in Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962).

■ It is next contended that the court below erred in refusing plaintiff's offered instructions dealing with the right of the plaintiff to assume that defendant would obey the law; with the defendant's duty of care when approaching pedestrians; and with the standard of conduct by which plaintiff's actions were to be judged. Viewing the instructions as a whole, Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674, we

think the general instructions given covered those points listed above upon which the plaintiff was entitled to instructions, and correctly stated the law. We likewise feel, considering the instructions as a whole, that the jury was adequately instructed that the defendant had the burden of proving his defense of contributory negligence.

■ Part of plaintiff's theory of the case was that the defendant was negligent because he swerved out of his lane of travel in violation of § 28–729 A.R.S.[1] Violation of a statute enacted for the public safety is negligence per se, Anderson v. Morgan, 73 Ariz. 344, 241 P.2d 786 (1952), and when this theory is supported by the evidence, the plaintiff is entitled to have a properly worded instruction on this issue read to the jury. Of course, a violation of the statutory duty must be also a proximate cause of the injury to constitute actionable negligence, Caldwell v. Tremper, 90 Ariz. 241, 367 P.2d 266 (1961).

■ The plaintiff next argues that the court, in instructing the jury, gave undue emphasis to the defendant's case by repeatedly ending instructions with the phrase "your verdict must be in favor of the defendant" or its equivalent, while only in connection with the instruction on last clear chance was the jury told that, if they found the facts to be in accordance with the instruction, they must find for the plaintiff. The plaintiff had submitted other instructions which would have bound the jury to return a verdict for the plaintiff, but the court properly modified these by striking the binding phrase and substituting the words "then the defendant was actionably negligent" since these instructions did not require every finding necessary for the plaintiff to prevail. Reid's Branson, Instructions to Juries § 126 (1960); Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168 (1934). Thus, in their unaltered form the instructions would have improperly bound the jury to return a verdict for the plaintiff if they found only that the defendant was negligent, without permitting them to consider the defense of contributory negligence. While undue emphasis on returning a verdict for one party is objectionable, Bean v. Gorby, 80 Ariz. 25, 292 P.2d 199 (1956), it does not appear that plaintiff objected to such emphasis when the instructions were read. Moreover, on the retrial of the case plaintiff will have the opportunity to recast her instructions in

í. "§ 28–729. Driving on roadways laned for traffic

"When any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent with this section shall apply:

"1. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety. * * *."

terms which will balance the emphasis on each side.

■ During the course of his closing argument to the jury defendant's counsel, plaintiff's counsel and the court engaged in the following colloquy:

"Mr. McCarty (Defendant's Counsel): There is one other thing that you heard both the first day and the last day and that is that this is this young lady's only day in court. Ordinarily, Ladies and Gentlemen, that is a very true statement. That ordinarily is very true. For all sides of the case there comes a day when we have to come to court and finally completely settle things for once and for all. But this is an unusual case, and this is not her last day in court. There will be another day in court, the day that Dr. Burley (sic) is called on the stand.

"Mr. Herring (Plaintiff's Counsel): Now, Your Honor, I ask that the jury be instructed to disregard this remark, that counsel be admonished, and that I be allowed to reopen the evidence to show that there will be no opportunity, no chance legally or otherwise to sue Dr. Burley or even ask Dr. Burley for any compensation. Now, counsel has gone far outside the record on many occasions during this trial, during the course of this argument—

"Mr. McCarty: I think we had better—

"Mr. Herring: (Continuing)—and I believe that this is a deliberate attempt to mislead the jury and I charge it as such, and I ask permission of Your Honor to reopen the case to show that that is not true.

"Mr. McCarty: Counsel has said this is her last day in court on these injuries and I intend to comment on that.

"The Court: Mr. Herring, I am going to let Mr. McCarty make his argument. You will have your opportunity to answer, Proceed.

"Mr. McCarty: There will be a day, and I predict that it will not be in the too distant future, that Dr. Burley will be called in to answer for what he did to this young lady. There is sworn testimony in the record, of course, that he mistreated the girl. Dr. Derickson told you that to his way of thinking, putting this girl out of that cast May 7, 1956, was just as sure as the sun will come up tomorrow morning to result in a non-union that it did result in.

"Do not be mislead by the statute of limitations, do not be mislead in that regard. The statute of limitations in this jurisdiction with respect to a minor's claim, the claim of anyone injured under the age of 21 years expires, the statutory time after the child

achieves the age of 21 years. The statute of limitations on any such claim as that in this jurisdiction is 2 years. And the right to sue Dr. Burley will expire two years after Miss Sisk's arrival at her 21st birthday. Don't let anybody tell you this is her last day in court. She is going to have No. 2 day against Dr. Burley. He is going to be here answering for his conduct in the case. It is an unusual case. It is an unusual case where you get as open and shut documented evidence of mistreatment as we have on this record."

Dr. Burleigh was not a party to the case, but had testified as a witness for the plaintiff. The court permitted the defendant, over the plaintiff's objection, to elicit testimony from another of plaintiff's witnesses which would tend to indicate Dr. Burleigh made an error of judgment in his treatment of the plaintiff.[2] The defendant argues that evidence of Dr. Burleigh's error in judgment in treating the plaintiff's injuries was properly admitted because it reflected on his qualification as an expert witness. While this may be correct, it is also true that the court in its discretion could have excluded testimony going to the credibility of a witness where there was danger of arousing bias or prejudice on the part of the jury, Borrow v. El Dorado Lodge, 75 Ariz. 139,

2. "[The situation on December 1, 1955, was reviewed. At that time an X-ray showed that the reduction of the fracture had deteriorated and that there was only about twenty-five percent bone to bone apposition.]

"Q. Well, now, do you believe that, in your opinion, Doctor Derickson, something should have been done at that time?

"[The objection of plaintiff's attorney to this question was overruled.]

"Q. Do you think something should have been done at that time, Doctor Derickson?

"A. Well, I would have done something, I will put it that way.

"Q. That is the sort of thing to you that represents a fairly simple subject for a closed reduction, doesn't it; you have done hundreds of them similar to it, haven't you?

"A. Well, a closed reduction might fail because there are some spikes here which might not interlock properly and it might require open reduction.

"Q. Might, but at least you would try?

"A. Yes.

"[The questioning was then directed to the situation of May 7, 1956.]

"Q. * * * [Y]ou told Mr. Herring that, in your opinion,—

"A. Yes. Well, I—the way I felt about—

"Q. (Continuing)—turning her loose in that shape inevitably would lead to the condition that we see in your X-ray of June 28th?

"A. Yes. But I think the factor involved in encouraging getting out of the cast was the radiologist's remark that there was some callus—

"Q. Yes.

"A. (Continuing)—that was there, but also associated with non-union just like I had three months ago.

"Q. Well, I can see callus there but I can also see a non-union. You don't have any trouble seeing that do you?

"A. No.

"Q. And I think you told Mr. Herring and the jury that turning the girl loose in that shape without a cast on her leg was just inviting what we see six week weeks later?

"A. In different words, but the same."

252 P.2d 791 (1953). When such evidence is admitted its use must be carefully restricted. Surely otherwise incompetent evidence admitted for the limited purpose of aiding the jury in evaluating the qualification of a witness should not be enlarged upon and emphasized to the jury, especially where no indication is given to the jury that it is to be considered by them only for a limited purpose. The statement of the defendant's counsel that an action could and would be brought against Dr. Burleigh for the very same injuries for which the plaintiff was then suing was not supported by the evidence and had no foundation in any testimony in the case.

"It is well established that any statements by counsel, not based on evidence, which tend to influence the jury in resolving the issues before them solely by an appeal to passion and prejudice are improper and will not be countenanced. * * * a verdict obtained by incorrect statements or unfair argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony." Narciso v. Mauch

Chunk Township, 369 Pa. 549, 87 A.2d 233, 33 A.L.R.2d 438 (1952).[3]

The defendant argues that any error created by the quoted argument to the jury goes only to the question of damages, and since the jury found that the defendant was not liable, such error would not be prejudicial. It seems clear that the defendant's counsel did not intend the jury to take his argument concerning the possibility of a second action against Dr. Burleigh as an argument in mitigation of damages. Defendant made no objection to plaintiff's modified Instruction No. 26, which precluded such mitigation, and made the following statement in his argument to the jury prior to the passage quoted above:

"there are some peculiar rules of law in the case. Now, one of them, of course, is the one Mr. Herring told you the first day, and that is the fact that some doctor came along and butchered the young lady is not for you to consider because that is part of her damages, * * *."

We think an analogy may be drawn between this case and those cases involving

**3.** See also: Tyrrell v. Prudential Ins. Co., 109 Vt. 6, 192 A. 184, 115 A.L.R. 392 (1937) (unsupported remark that wife claiming insurance proceeds knew where missing husband was held reversible error); Hockaday v. Red Line, Inc., 85 U.S. App.D.C. 1, 174 F.2d 154, 9 A.L.R.2d 601 (D.C.Cir.1949) (reference in argument to plaintiff's failure to enter military service held prejudicial error); Hall v.

Chicago & N. W. Ry. Co., 5 Ill.2d 135, 125 N.E.2d 77, 50 A.L.R.2d 661 (1955) (counsel's reference to tax deductibility of damages held reversible error); Book v. Erskine & Sons, 154 Ohio St. 391, 96 N.E.2d 289, 32 A.L.R.2d 1 (1951) (argument of plaintiff's counsel pointing out relative financial status of plaintiff and defendant held to be grounds for remand).

a disclosure to the jury that a defendant has insurance covering the injuries caused by him. The courts carefully guard against the improper disclosure to the jury that a defendant is insured. Tom Reed Gold Mines Co. v. Morrison, 26 Ariz. 281, 224 P. 822 (1924); Annot. 4 A.L.R.2d 761 (1947). It is thought that if juries know the defendant will not have to personally pay, they will more readily find him liable and fix the damages at a higher figure. Here we have the converse situation. Where the jury is lead to believe that the plaintiff has another chance to recover from the doctor for this same injury, and are told he will surely do so, they might consider the plaintiff to be avaricious, or they might desire to cast the entire burden of damages upon the offending physician who, in their view, might be better able to pay, or more culpable than the defendant before them. For like reasons, the disclosure that a plaintiff in a personal injury action is also entitled to workmen's compensation benefits has been held to be reversible error, Altenbaumer v. Lion Oil Co., 186 F.2d 35 (5th Cir. 1950) and cases cited in Annot. 77 A.L.R.2d 1154 (1961).

We find no merit in defendant's contention that plaintiff invited the remarks of counsel for defendant by stating to the jury that the plaintiff would have but one opportunity to come before a jury or by asking on voir dire if a prospective juror would follow the rule of law permitting a plaintiff to recover for all injuries, even though they might be aggravated by subsequent medical treatment.

For the reasons given, the case is remanded to the lower court for retrial.

STRUCKMEYER, J., and LAURANCE T. WREN, Superior Court Judge, concur.