693 P.2d 348

Gordon MAXWELL, as personal representative of the estate of Susan Maxwell, Deceased, Plaintiff-Appellant, Cross-Appellee,

v.

AETNA LIFE INSURANCE COMPANY, a foreign corporation, Defendant-Appellee, Cross-Appellant.

No. 1 CA–CIV 5550.

Court of Appeals of Arizona, Division 1, Department B.

July 12, 1984.

Reconsideration Denied Sept. 24, 1984.

Review Denied Dec. 18, 1984.

See also, 128 Ariz. 350, 625 P.2d 939, App.

Thur & Preston by Calvin C. Thur, Scottsdale, for plaintiff-appellant, cross-appellee.

Black, Robertshaw & Copple, P.C. by Steven D. Copple, Philip C. Thorpe, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

GRANT, Judge.

This appeal and cross-appeal arose out of an action by the insureds for the wrongful delay in honoring a disability premium waiver provision in a major medical policy and a disability benefit policy in breach of the insurer's duty of good faith and fair dealing. Judgment was entered after a jury trial in favor of Gordon Maxwell, individually and as the personal representative of the estate of Susan Maxwell (Estate), and against Aetna Life Insurance Company (Aetna). Gordon Maxwell, individually, did not appeal. The Estate appeals from the denial of its motion for new trial on the

issue of damages. Aetna cross-appeals from the underlying judgment in favor of the Estate and against Aetna, as well as the denial of its motion for judgment notwithstanding verdict and/or motion for new trial.

The issues on appeal can be grouped as follows:

1. Whether there is sufficient evidence to support the verdicts.

2. Whether the trial court improperly instructed the jury.

3. Whether the trial court improperly admitted certain evidence.

4. Whether defense counsel improperly made prejudicial remarks during closing arguments.

5. Whether the punitive damages verdict may be set aside for juror misconduct.

6. Whether defense counsel committed prejudicial error by referring to a separate wrongful death action.

7. Whether the damages awarded were inadequate as a result of passion and prejudice.

The facts necessary for resolution of the appeal and cross-appeal are as follows: Gordon and Susan Maxwell were married in 1961. In 1973, Aetna issued two policies to the Maxwells. One, the "-Pay-Gard/Preferred Disability Policy" (Disability policy) covered income loss due to a total temporary or total permanent disability of Gordon Maxwell. The other policy (Major Medical policy) provided major medical benefits to the entire Maxwell family. The Major Medical policy contained a premium waiver provision in the event the insured, Gordon Maxwell, became totally disabled.

In 1974, Gordon Maxwell was employed as a manufacturer's representative serving an area in the upper Midwest, which required extensive automobile travel. While the two insurance policies were in force Gordon was hospitalized and underwent surgery for low back problems in May and August, 1974. Gordon was under the care of Minneapolis, Minnesota, physician Donald Erickson, M.D. Dr. Erickson submitted reports to Aetna on May 30, 1974, September 27, 1974, and November 26, 1974 indicating that Gordon would be "continuously totally disabled (unable to work)" for an "indefinite" period of time. After the 90 day waiting period prescribed by the Disability policy, Aetna began paying disability benefits to Gordon. Aetna paid the disability benefits through January 1, 1975.

Sometime in December, 1974, the Maxwells moved to Phoenix, Arizona. Aetna transferred the Maxwells' claims file to its office in Long Beach, California. In January, 1975 Aetna requested Gordon to submit to an independent medical examination by Dr. Alvin Swenson, M.D. Dr. Swenson conducted an examination on February 21, 1975 and concluded that Gordon could not yet return to full regular work as a salesman driving long distances and carrying heavy samples. The report did indicate that Gordon could handle lighter forms of work, despite a permanent 5 to 10% impairment of the function in his lower back.

Based on this report Aetna maintained that its liability under the Disability policy terminated no later than February 21, 1975 —the date of Dr. Swenson's exam. On April 18, 1975 the Maxwells' Major Medical policy apparently lapsed for non-payment of premium. After communication with Aetna, Gordon tendered a check dated June 18, 1975 in the amount of $515.55 for the annual premium on the Major Medical policy. However, the annual premium had risen to $695.99. Aetna gave Gordon the option of paying the $180.44, applying the $515.55 check to a semi-annual premium of $354.95, or canceling coverage. Gordon apparently elected not to reinstate coverage and Aetna returned Gordon's check on July 16, 1975.

In early April, 1975 Gordon accepted a position as a real estate salesman. However, Gordon could not properly carry out his duties due to problems with his back. Gordon ultimately resigned on June 16, 1975 due to the continuing back problems. These facts were communicated to Ed Sambrano of Aetna by a letter mailed by Gordon's employer on July 25, 1975.

On July 16, 1975 an inter-office communication from Aetna's Long Beach office to the Phoenix office revealed the reopening of Gordon's file since the insured was totally disabled from his own occupation. Subsequent inter-office memos indicate that Aetna believed that Gordon's employment as a real estate salesman precluded him from being totally disabled.

On July 31, 1975 Dr. Swenson sent Aetna a supplemental report indicating that Gordon was not totally disabled from his occupation as a real estate salesman. The letter stated, however, that Gordon would have to curtail his hours of working due to his injury. This report was based solely on the prior February 21st examination. On August 28, 1975 Dr. Erickson wrote Aetna that Gordon was disabled from his previous occupation of manufacturer's representative. Aetna continued to withhold payment of disability benefits, and did not apply the premium waiver provision of the Major Medical policy.

On October 19, 1975 Susan Maxwell entered the hospital for treatment of a soft drug addiction. She initially underwent a detoxification program. Due to her lack of insurance and limited financial resources Susan did not participate in biofeedback therapy as was recommended.

Shortly after Susan entered the hospital, on October 22, 1975, Gordon and Susan Maxwell filed this action. The complaint alleged, in part, wrongful denial or delay in payment of benefits under the disability policy, and wrongful failure to honor the disability premium waiver provision in the Major Medical policy. The summons and complaint were served on October 22, 1975 upon the Arizona Director of Insurance.

On October 30, 1975 Gordon Maxwell underwent a physical examination by Doctor John R. Green, M.D. Dr. Green concluded that Gordon was continuously disabled from March, 1974 until the date of the exam. The report stated that Gordon "is unable to carry out full time occupation." The Maxwells' attorney forwarded this report to Mary Koolish, an Aetna claims representative on November 14, 1975. The report was received no later than November 19, 1975 and forwarded to Aetna's attorneys, as well as Ed Sambrano in Long Beach.

Due to a lack of insurance, Susan prematurely ended her treatment at the hospital. Susan left the hospital on November 14, 1975—2 to 3 weeks prior to completion of her treatment.

On December 2, 1975 Susan Maxwell committed suicide. The next day, Calvin Thur, the Maxwells' attorney wrote to inform Aetna of the suicide. On December 4, 1975, Don Neff, a senior analyst with Aetna, recommended in an inter-office memo that Aetna should pick up all back benefits and also the waiver of premiums on both policies.

On December 5, 1975 Aetna learned of Susan Maxwell's suicide. At this point Aetna began marking communications concerning the Maxwells as urgent. Thereafter, on February 18, 1976 Aetna retroactively placed the Major Medical policy on disability premium waiver. Aetna then paid 80% of the eligible expenses incurred in Susan's hospital bill during her stay from October 19 to November 14, 1975.

In December, 1977, a separate wrongful death action against Aetna was filed on behalf of Susan Maxwell's estate. The instant action came to trial on January 10, 1980 after the Estate was substituted for Susan Maxwell as a party plaintiff. The trial involved not only the Estate's claim, but Gordon Maxwell's individual claims based on the Disability policy. The jury returned a verdict for Gordon Maxwell, individually, and awarded him $45,000 in compensatory damages and $75,000 in punitive damages. Also, the jury returned a verdict in favor of the Estate in the amount of $1,000 compensatory damages and $1 in punitive damages.

## CROSS-APPEAL BY AETNA

### I. SUFFICIENCY OF THE EVIDENCE

Aetna argued in its motion for judgment n.o.v., and here on appeal, that the Estate

failed to produce sufficient evidence to permit the jury to render a verdict. Specifically, Aetna states that there was insufficient evidence that Gordon was totally disabled within the definition of the Major Medical policy and that Aetna was guilty of intentional, wilful, or wanton misconduct.

■ On appeal from a denial of a motion for judgment n.o.v. this court views the evidence in a light most favorable to sustaining the verdict. *Lerner v. Brettschneider*, 123 Ariz. 152, 598 P.2d 515 (App. 1979). This court must then review the evidence to determine whether the evidence would permit a reasonable person to reach the challenged verdict. *Id.*

Aetna first claims the Estate failed to produce sufficient evidence that Gordon was totally disabled under the premium waiver provision of the Major Medical policy. The policy provided for a premium waiver where "injury or such sickness shall totally disable the Insured for 6 consecutive months." The policy contained the following definition:

> "Total disability" means that such injury or such sickness ... shall totally and continuously disable the Covered Person and completely prevent him (i) from engaging in any occupation or employment for which he is qualified or may reasonably become qualified by education, training or experience....

■ Contrary to the assertion by Aetna the record does contain sufficient evidence from which the jury could reasonably conclude Gordon's disability qualified as a "total disability." *See id.* Dr. Erickson's report listed Gordon as totally disabled from a period beginning as early as May 5, 1974—the date of Gordon's first hospitalization. Later reports on September 27 and November 26, 1974 from Dr. Erickson also indicated total disability for an indefinite period. Gordon's inability to function as a real estate salesman during his brief attempt is evidence of the total disability reported by Dr. Erickson. Dr. Green's report in October, 1975 stated that Gordon could not "carry out full time occupation." The December 4, 1975 memo from Don

Neff recommended retroactive waiver of the Major Medical policy medical premiums. Finally, in February, 1976 Aetna did retroactively waive the premiums. This is sufficient evidence, irrespective of any possible conflicting evidence, on which the jury could find that a reasonable insurer would not have delayed or denied coverage. *See Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866 (1981).

■ Sufficient evidence was also produced on the issue of whether to award punitive damages. The record reveals that Aetna knew of the above medical information and the reasons for Gordon's resignation from the real estate job. Aetna knew Susan entered the hospital, so that the Maxwells would want the insurance coverage for the bill. The complaint certainly put Aetna on notice of the Maxwells' claims. Several inter-office memos between Aetna employees indicated that Aetna's position was questionable. Only after the suicide was any request for urgency placed on the Maxwells' file. Yet the retroactive premium waiver became effective only in February, 1976. We have not tried to detail all the facts and inferences to support the jury's finding of wilful and wanton conduct, but have only highlighted some of the evidence.

## II. INSTRUCTIONS

■ Aetna contends that the trial court improperly instructed the jury. First, Aetna argues that the trial court erroneously refused its requested instruction 27, which read:

The Plaintiff has the burden of proving:

1. That the Defendant acted with extreme and outrageous unprivileged conduct either with the specific intent to cause severe emotional distress as with a reckless disregard of the probability of causing such distress.

2. That Gordon Maxwell suffered extreme emotional distress and financial loss.

3. That the Defendant's extreme, outrageous and unprivileged conduct was a cause of the injury to the Plaintiff and financial loss.

Whether Plaintiff has proved any of these things is for you to determine.

Rule 51(a), Arizona Rules of Civil Procedure, in part states:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

General objections are insufficient. *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 652 P.2d 507 (1982); *Long v. Corvo*, 131 Ariz. 216, 639 P.2d 1041 (App.1981).

Here defense counsel objected by stating:

I object to the Court's refusal to give all of the other instructions that I offered, to the extent that the Court refused on the basis that they had been covered, because they were—they were not covered, either in substance or in manner, as proposed.

Nowhere in this general objection is any reference made to requested instruction 27. Further, this objection is as general as the one disapproved of in *Grant*, where counsel objected that the instruction "is an improper statement of the law." 133 Ariz. at 446–47, 652 P.2d at 519–20. Therefore, any error resulting from the refusal of this instruction is waived. We do not reach the merits of whether the instruction was a proper statement of the law.

Any possible error in the denial of the requested instruction would be harmless error. The instruction dealt with a theory—intentional infliction of emotional distress—not relied upon by the Estate. Further, the entire instructions as given informed the jury of the proper rules to apply. *See Kaufman v. Schroeder*, 116 Ariz. 104, 568 P.2d 411 (1977).

Second, Aetna argues that the trial court's failure to instruct the jury on the definition of "total disability" under the Major Medical policy is reversible error. Aetna concedes that it did not object to such failure, nor offer any instruction on this subject. Aetna relies on the fundamental error exception to Rule 51(a). This exception has been recognized by Arizona courts. *E.g., Johnson v. Elliot*, 112 Ariz. 57, 537 P.2d 927 (1975).

 The doctrine of fundamental error is applied sparingly in civil cases. *Id.* An error is fundamental only when it deprives a party of the right to a fair trial. *See Moser v. Mardian Construction Co.*, 20 Ariz.App. 27, 509 P.2d 1064 (1973). Here, Aetna introduced into evidence the Major Medical policy and argued to the jury the distinction between the definitions in the two policies.[1] Therefore, the failure to give an instruction on the definition of "total disability" did not constitute fundamental error, and any error is deemed waived. Rule 51(a).

## III. EVIDENCE

Aetna claims that the trial court committed reversible error by admitting the fol-

---

**1.** The Disability policy provided for disability benefits when:

[I]njury ... shall totally and continuously disable and completely prevent the Insured from engaging in his occupation or employment....

The court instructed the jury that:

A "Your Own Occupation" disability policy is one which, by its terms, requires only that the insured by [sic] unable to perform the necessary duties of his particular occupation in order to be considered totally disabled. Total disability in this type of insurance policy does not require that the insured shall be absolutely helpless. Total disability under an occupational disability policy means inability to do

substantially all of the material acts necessary to the prosecution of the employees' business or occupation in substantially his customary and usual manner, or inability to do his accustomed tasks and such work as he has been trained to do, upon which he must depend for a living.

The term "total disability" within a "Your Own Occupation" disability insurance policy does not mean absolute physical inability of the insured to transact any kind of business pertaining to his occupation, that it is sufficient if injuries are of such character that common care and prudence require him to desist from transaction of such business so long as reasonably necessary to effect a cure.

lowing evidence: (a) the references to the decision in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480 (1973); (b) the letter from the Maxwells' attorney dated December 3, 1975; (c) the notes of Susan Maxwell concerning telephone conversations with Aetna employees; (d) the fact that Susan Maxwell committed suicide; and (e) Aetna's claims manuals.

The trial court permitted the plaintiffs' attorney to elicit from witnesses the fact that Aetna's employees were aware of the tort of insurer bad faith established in the *Gruenberg* decision. The trial court properly admitted this evidence as establishing Aetna's state of mind or knowledge. The record indicates that counsel advised the lower court of the possibility of prejudice due to the similarity of the name of Aetna to the defendant in *Gruenberg*. The judge, nevertheless, decided in his discretion to permit reference to the case. Only where the prejudice substantially outweighs the probative value will relevant evidence be excluded. *Fridena v. Evans*, 127 Ariz. 516, 622 P.2d 463 (1980); Rule 403, Arizona Rules of Evidence. On the record before us we cannot say the trial court erred in admitting evidence on *Gruenberg*.

Aetna also claims that the trial court improperly admitted certain portions of a letter from the Maxwells' attorney, Calvin Thur, to Aetna. That letter, which Aetna retained in the Maxwells' claim file, was properly admitted to show Aetna's knowledge of Susan Maxwell's suicide.[2] Aetna, however, contends that the court should have excised out paragraphs 2 and 3. In a motion in limine Aetna argued that paragraph 2, which refers to conversations between Thur and Koolish, an Aetna employee, constituted hearsay. Paragraph 3, which is an emotional appeal indicating the suicide shows that an insurance company's delay or denial of liability can destroy peace of mind, was attacked as being self-serving and irrelevant.

The trial court is granted discretion in deciding to admit or exclude evidence. *Gallagher v. Viking Supply Corp.*, 3 Ariz.App. 55, 411 P.2d 814 (1966). Since the deposition of Mary Koolish, which was read into evidence at trial, confirmed the hearsay references in paragraph 2, Aetna suffered no prejudice and the admission of paragraph 2 is harmless error. *Kengla v. Stewart*, 82 Ariz. 365, 313 P.2d 424 (1957). Paragraph 3 does contain self-serving remarks. However, the same can be said with regard to much of the entire claims file maintained by Aetna.

It is not contended that the court erroneously admitted Aetna's entire claims file on the Maxwells. We hold merely that the trial court did not abuse its discretion in failing to excise one or two paragraphs of an otherwise admissible claims file which contained nearly 300 pages. *See Grant v. Arizona Public Service Co.*

Next, Aetna contends that it was error to admit Susan Maxwell's notes about conversations she had with Aetna employees and testimony by Gordon about those notes. Aetna, however, did not properly preserve this point for review on appeal.

Counsel for Aetna attempted to make a motion in limine to exclude any exhibits which contained writings of Susan Maxwell on the basis of hearsay. The Maxwells' attorney indicated that the notes fell within the state of mind exception to the hearsay rule. *See* Rule 803(3), Arizona Rules of Evidence. Thereafter, Aetna's counsel conceded that the notes would be admissible under Rule 803(3) subject to the plaintiff at trial proving the foundation for the state of the mind exception. Rule 803(3). Judge Gerber, who did not have all the intended exhibits before him, ruled that counsel should raise the foundation objection at the appropriate time at trial. Aetna's counsel acknowledged and accepted this ruling.

Since Aetna did not cite to the record for any objection at trial for lack of foundation we can only assume that Aetna's counsel made no such objection. *See*

---

**2.** See discussion *infra* on the admissibility of evidence of Susan Maxwell's suicide.

*Hubbs v. Costello*, 22 Ariz.App. 498, 528 P.2d 1257 (1974). Aetna failed to assert a timely objection, therefore it waived its right to assert any error therefrom. *See Ball Corp. v. George*, 27 Ariz.App. 540, 556 P.2d 1143 (1976).

Aetna also argues that the notes should have been excluded as prejudicial under Rule 403, Arizona Rules of Evidence. This ground was not argued to the trial court and thus may not be asserted on appeal. *Sampson v. Transport Indemnity Co.*, 1 Ariz.App. 529, 405 P.2d 467 (1965).

Aetna's fourth claim of error in evidentiary rulings is the admission into evidence of Susan Maxwell's suicide. Aetna, in a motion in limine, sought to exclude this evidence as irrelevant or prejudicial under Rule 403, Arizona Rules of Evidence.

The trial court admitted the evidence of Susan Maxwell's suicide as relevant to Aetna's timing of their decision to pay disability benefits, to Aetna's state of mind, and to Gordon's mental suffering. We believe the first two reasons given by the lower court indicate that it properly admitted such evidence. *See Reader v. General Motors Corp.*, 107 Ariz. 149, 483 P.2d 1388 (1971); Rule 401, Arizona Rules of Evidence. Nor can we say that the trial judge abused his discretion in admitting this evidence despite a recognized possibility of prejudice. A court will exclude evidence under Rule 403 only where its probative value is substantially outweighed by the danger of unfair prejudice. *Fridena v. Evans*. Aetna failed to make an adequate showing on this point.

Aetna secondarily argues that plaintiffs used evidence of Susan Maxwell's suicide to prove Aetna caused her death. Aetna apparently never objected to any trial references and therefore waived any objection thereto. *Ball Corp. v. George*.

Finally, Aetna's fifth argument is that the trial court erred in admitting portions of Aetna's claims manuals. However, this court is apprised of only two objections and thus need not consider any alleged error with regard to other admissions.

*Ball Corp. v. George*. Those two instances involved manuals dealing with accidental death benefits and group disability policies, neither of which were involved in this action. However, the trial court overruled the relevancy objections on the ground that the manuals demonstrated knowledge by Aetna of factors which may cause emotional distress. Such evidence was relevant to Gordon's claim of intentional infliction of emotional distress. *See Reader v. General Motors Corp.*; Rule 401, Arizona Rules of Evidence. Thus, the trial court properly admitted such evidence as against Gordon. Aetna apparently did not move for a limiting instruction and so waived any resulting error. *See Ball Corp. v. George*.

## APPEAL BY THE ESTATE

### IV. CLOSING ARGUMENT

The Estate in its motion for new trial claims three instances of misconduct by defense counsel during closing argument. The Estate argues that Aetna's counsel improperly stated that two of Aetna's agents stood indirectly accused of Susan's murder. Apparently the Estate made no objection. This failure to object constitutes a waiver unless the matter is so serious that no admonition could undo the damage. *Manner v. Raskin*, 113 Ariz. 3, 545 P.2d 927 (1976). The Estate, however, demonstrated no prejudice resulting from this comment.

The Estate's second claim of misconduct involves statements by Aetna's counsel that a large verdict would make Gordon Maxwell an "instant millionaire" and provide a "windfall." These remarks on their face have no relevance to the claim by the Estate. Nor was any objection made thereto. Thus, any error, not being so prejudicial, is waived. *See Manner v. Raskin*.

The Estate's final argument on this issue involves defense counsel's statement that "this is a community property state, and ... it's only her half on any dollar loss to the marital community that would go to

her estate." The Maxwells moved for a mistrial due to the reference to community property. The Estate relies on *Zelman v. Stauder*, 11 Ariz.App. 547, 466 P.2d 766, *modified in* 12 Ariz.App. 178, 468 P.2d 943 (1970), in support of its argument that such a reference constituted reversible error.

*Zelman* involved a personal injury action where defense counsel read to the jury during final argument from A.R.S. § 28–952(C), dealing with defective brakes. This occurred after settlement of instructions in which the court refused an instruction based upon this statute. The court of appeals stated in dicta that:

> [I]t is highly prejudicial and improper to read statutes to the jury which have been expressly held not applicable by the trial court.... To disregard the trial court's ruling and read to the jury the stricken statute cannot be condoned.

11 Ariz.App. at 551, 466 P.2d at 770.

Aetna argues that the community property reference was proper to point out the danger of double recovery. Alternately, Aetna argues that since there is no evidence to sustain any verdict there can be no error.

We have already disposed of Aetna's sufficiency challenge. The instructions clearly explained to the jury on what basis they could award damages to the Estate. The instructions required the jury to differentiate between the damages to Gordon and to the Estate. Thus, the community property reference, which lacked an evidentiary basis, is not justifiable as necessary to avoid a double recovery. We also note Aetna has not urged on cross-appeal any error in failing to instruct the jury on community property principles.

■ *Zelman*, however, does not indicate that such an argument will automatically be grounds for reversal. The granting or denial of a mistrial because of counsel's misconduct is within the discretion of the trial judge. *Mahoney v. Frost*, 101 Ariz. 344, 419 P.2d 523 (1966); *McRae v. Forren*, 5 Ariz.App. 465, 428 P.2d 129 (1967). A new trial will not be granted as a disciplinary measure, but only where such misconduct materially affects the rights of the aggrieved party. *Grant v. Arizona Public Service Co.* Misconduct materially affects an aggrieved party's rights where it appears probable the misconduct actually influenced the verdict. *See id.*

■ The record before this court reveals a $1,000 compensatory damages verdict which is justified by the evidence as a reasonable award. Also, the judge instructed the jury that:

> I will now tell you the rules you must follow to decide this case. I will instruct you on the law. It is your duty to follow the law. It is also your duty to determine the facts. You must determine the facts only from the evidence produced in Court. You should not guess about any fact.
>
> \* \* \* \* \* \*
>
> In the Opening Statements and Closing Arguments the lawyers have talked to you about the law and the evidence. As I have told you previously, and I will tell you again, it is important for you to remember that what the lawyers said in their Opening Statements, their Closing Arguments, and in their objections, comments during the course of trial, that is not evidence, but it may help you to understand the evidence that was admitted here in the Courtroom.
>
> \* \* \* \* \* \*
>
> The damages recoverable by Susan Maxwell's estate in this case are limited to those actual monetary damages which she may have suffered in the form of expenses, interest, and the loss of property rights during her lifetime caused by the lapse of the medical insurance policy in which she was a named insured.
>
> If you find compensatory damages for monetary loss to the estate of Susan Maxwell which are separate and distinct from any of the compensatory damages which you find for Gordon Maxwell, you may then, in your discretion, award separate punitive damages to the estate of Susan Maxwell.

■ The trial court has an enhanced opportunity and advantage in weighing the potential prejudice of counsel's improper remarks. *Id.* On the record before us this

court cannot conclude that the trial judge's denial of a motion for mistrial due to the community property reference was a clear abuse of discretion. *See Grant v. Arizona Public Service Co.*

## V. JUROR MISCONDUCT

The Estate claims that the trial court should have granted a new trial on the ground that two of the jurors were excluded from the deliberation on the amount of punitive damages awarded the Estate. Affidavits of two jurors indicate that they left the jury room and that when they returned the other six jurors were passing around a verdict form awarding one dollar in punitive damages to the Estate. The Estate claims that such juror misconduct deprived it of the right to a full jury trial. *See U.S. Const.* amend. VII; *Ariz. Const.* art. 2, § 23; A.R.S. § 21–102(C); Rule 38, Arizona Rules of Civil Procedure.

 Arizona law is clear that a party may not use affidavits of jurors to impeach a verdict. *E.g., Gorski v. J.C. Penney Co.*, 103 Ariz. 404, 442 P.2d 851 (1968); *Hall v. Delvat*, 95 Ariz. 286, 389 P.2d 692 (1964); *Valley National Bank v. Haney*, 27 Ariz.App. 692, 558 P.2d 720 (1976); Rule 606(b), Arizona Rules of Evidence. A party may not use juror affidavits to produce evidence of events occurring in, or learned about in the jury room, to impeach the verdict. *Gorski v. J.C. Penney Co.* The conduct of the jury in its deliberations inheres in the verdict and may not be impeached by a juror's testimony or affidavit. *Valley National Bank v. Haney.* Compare *Kirby v. Rosell*, 133 Ariz. 42, 648 P.2d 1048 (App.1982) (juror affidavits permitted as to extraneous information which improperly reached jury). Also, where, as here, enough jurors concur in the verdict to sustain it, then any possible misconduct is harmless error. *Leroy v. Phillips*, 8 Ariz. App. 524, 448 P.2d 94 (1968).

## VI. WRONGFUL DEATH

The Estate argues that it is entitled to a new trial on the issue of damages due to Aetna's counsel's improper references to the separate pending wrongful death action. During cross-examination of Jennifer Crimson, Aetna's counsel inquired as to the filing of a separate wrongful death action by the plaintiffs' attorney. The wrongful death complaint was not listed in the pre-trial statement as an exhibit. Nor did the pre-trial statement make any mention of such action.

The Maxwells' attorney moved for a mistrial due to such reference. The trial judge denied the motion indicating that "even without this, that an instruction would have had to have been given." An instruction was ultimately given to the jury which read:

There has been mention during trial of a wrongful death action which was brought against Aetna Life Insurance Company on behalf of the surviving husband and child of Susan Maxwell. Recovery, if any, in such an action in Arizona is limited to the damages to the survivors resulting from the death of Susan Maxwell.

You should not concern yourself in any way with that wrongful death action, because the issues in that action and the damages recoverable in that action are different from those in this action.

Knowing the judge would so instruct the jury Aetna's counsel referred to the wrongful death action six times in closing argument. These references appeared to be directed at emphasizing the distinction in damages involved in the two actions. The Estate, however, contends that the real purpose was to inform the jury of another source of compensation.

Thus, the Estate claims that this court should reverse the trial court and grant a new trial on the damages issue. In support of its position the Estate cites *Sisk v. Ball*, 91 Ariz. 239, 371 P.2d 594 (1962), *Manhattan-Dickman Construction Co. v. Shawler*, 113 Ariz. 549, 558 P.2d 894 (1976), and *McRae v. Forren*, 5 Ariz.App. 465, 428 P.2d 129 (1967).

In *Sisk* the Arizona Supreme Court held that the plaintiffs were entitled to a new trial, in part, for statements to the jury in closing argument that a suit could and would be brought for malpractice against a doctor-witness for the same injuries. In

*Manhattan-Dickman* the Arizona Supreme Court ordered an additur where counsel at trial repeatedly refered to the fact that plaintiff could obtain workmen's compensation for his injuries. The trial court refused to instruct the jury as to the statutory lien of the State Compensation Fund. In *McRae* the court of appeals affirmed the trial court's decision to grant a new trial due to counsel's statements made in closing argument that plaintiffs could be fully compensated by the estate of a joint tortfeasor. The estate had been dismissed as a party pursuant to a covenant not to sue.

Aetna seeks to distinguish those cases on two grounds: that Aetna had an evidentiary basis for its remarks and the references to the wrongful death action were necessary to point out the risk of double recovery. Aetna's first distinction merely begs the question of whether Aetna committed reversible error in eliciting evidence of the separate action. Aetna's second distinction is without merit. If Aetna desired to minimize the risk of double recovery it could have requested the judge to properly and clearly instruct the jury on what basis it could award damages. The instructions actually given provided just such guidance.

The repeated references and the evidence of the wrongful death action were used by Aetna on the issue of damages rather than liability. The $1,000 award for compensatory damages, however, is reasonable and supported by the evidence. (See discussion of adequacy of damages, *infra.*) Thus, apparently the jury properly distinguished the damages involved in the two suits, and would have reached the same verdict had the improper evidence been excluded. *See Harris v. Thompson,* 18 Ariz.App. 154, 500 P.2d 1142 (1972).

We cannot say, however, that such evidence did not influence the jury award of $1 in punitive damages. Thus, we hold it to be reversible error. *See id.* Whether inadequate punitive damages may justify a new trial is an issue of first impression. We hold for reasons to be discussed that in certain circumstances an inadequate award of punitive damages will compel the granting of a new trial on that issue.

## VII. ADEQUACY OF DAMAGES

The Estate contends on appeal that it is entitled to a retrial of the damage issues since the verdicts for both compensatory and punitive damages are inadequate. The Estate claims that the uncontradicted evidence of the value of Susan Maxwell's property interest in the lapsed policy exceeds the $1,000 awarded as compensatory damages. An award of compensatory damages is not sufficiently inadequate to justify a new trial unless the record reveals that the verdict was the result of passion and prejudice. *See Romero v. Stines,* 18 Ariz.App. 455, 503 P.2d 413 (1972).

The Estate submits that the uncontradicted evidence proved that Susan left the hospital 3 weeks prematurely. Based on the daily average rate of $77.96 for which Aetna was liable from Susan's stay from October 19 to November 14, the Estate concludes that the total amount for which Aetna would have been liable was at least $1,403.28.[3]

However, the record was in conflict as to whether Susan left the hospital 2 or 3 weeks prematurely. Thus, the jury could have concluded that Susan left only 2 weeks early. Also, the record indicated that Susan's anticipated treatment would have been different than the treatment she had already received. Plaintiffs did not introduce evidence on the cost of this lost treatment. While the room charge and daily supervision fee, totaling $75.00 per day, would continue, Aetna would be liable for only 80% of this figure. Thus, the $1,000 award adequately compensated the Estate for any lost benefits and residuary property interest in the lapsed policy.

---

**3.** This figure is derived by the following calculations:

$3,420.61 (total bill of Oct. 19 to Nov. 14)
− 886.00 (ineligible medical expenses)

$2,534.61 (eligible medical expenses)
× .80

$2,027.68 (amount paid by Aetna)
÷ 2 (length of stay)

$ 77.96 (daily average) [correct figure would be $77.99]
× 18 (days until Susan's death)
$1,403.28

■ The Estate further argues that the $1 award of punitive damages resulted from passion and prejudice, thereby justifying a new trial on this issue. The amount of an award for punitive damages is a matter of discretion with the trier of fact, and such award will not be disturbed unless it is so unreasonable in relation to the circumstances as to show influence of passion or prejudice. *Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966). The size of the verdict alone is not sufficient evidence of passion or prejudice on the part of the jury. *Jackson v. Mearig,* 17 Ariz. App. 94, 495 P.2d 864 (1972).

Since the decisions whether to award any punitive damages and the amount of any award are discretionary with the trier of fact, *Nielson v. Flashburg,* Aetna argues that no award of any amount of punitive damages may be held inadequate. Aetna relies primarily on the decision in *Louisville & Nashville Railroad Co. v. Street,* 164 Ala. 155, 51 So. 306 (1909). *Accord Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437 (1980); *Wussow v. Commercial Mechanisms, Inc.,* 90 Wis.2d 136, 279 N.W.2d 503 (App.1979), *rev'd on other grounds,* 97 Wis.2d 136, 293 N.W.2d 897 (1980). *See also* 22 Am.Jur.2d *Damages* § 266, p. 361 (1965); Ghiardi, *Punitive Damages in Wisconsin,* 60 Marq.L.Rev. 753, 765 (1977).

In *Street* the trial court ordered a new trial after the jury awarded one cent in damages in an action under the Alabama homicide statutes. Under Alabama law any damages were solely punitive. The *Street* court held that since the plaintiff had no right to any punitive damages there could be no review and revision of a verdict under the homicide statute on the sole ground of the inadequacy of the amount awarded. *Id.* The Supreme Court of Alabama continues to follow this rule with regard to similar statutes providing for solely punitive damage recoveries. *See Crenshaw v. Alabama Freight, Inc.,* 287 Ala. 372, 252 So.2d 33 (1971).

Other courts, however, have held an award of punitive damages may justify a new trial where the amount is so inadequate as to indicate prejudice or passion or improper influence. *See Trahan v. Cook,* 288 Ala. 704, 265 So.2d 125 (1972); *St. Regis Paper Co. v. Watson,* 428 So.2d 243 (Fla.1983); *Lassitter v. International Union of Operating Engineers,* 349 So.2d 622 (Fla.1976). *Cf. Devine v. Patteson,* 242 F.2d 828 (6th Cir.) (where court found no abuse in $1 award of punitive damages after review of record), *cert. denied,* 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed.2d 36 (1957). *See also* 25 C.J.S. *Damages* § 126(1), p. 1162 (1966).

These two positions are not mutually exclusive. The Florida courts have adopted both viewpoints. *See St. Regis Paper Co. v. Watson.* The Florida Supreme Court in *St. Regis* explained:

> We hold that a trial judge has no authority to order a new trial solely because, in his view, the punitive damages awarded by the jury were inadequate in comparison to the defendant's net worth. We recognize, however, that a new trial may be ordered if the trial judge finds that the jury awarded an unreasonably small amount of punitive damages because the jury was improperly influenced or because some fraud contaminated the jury verdict.

428 So.2d at 248. The two positions are not inconsistent and thus the Florida Supreme Court harmonizes the two.

The issue here is whether the trial court abused its discretion by not finding that the $1 punitive damage award resulted from jury passion or prejudice or improper influence. The Estate submits as evidence on this point the fact that Aetna is one of the world's largest insurance companies; the imposition of $75,000 in punitive damages on Gordon Maxwell's individual claim; and such passion and prejudice as arose from the trial errors previously alleged. These previously alleged errors include the reference to community property and evidence of the wrongful death action.

■ Punitive damages are awarded to punish a defendant for its wilful and malicious acts. *Huggins v. Deinhard,* 127

Ariz. 358, 621 P.2d 45 (App.1980). Therefore, generally the wealthier the defendant the larger the award should be to accomplish this objective. *Ford Motor Co. v. Home Insurance Co.,* 116 Cal.App.3d 374, 172 Cal.Rptr. 59 (1981); *Alhino v. Starr,* 112 Cal.App.3d 158, 169 Cal.Rptr. 136 (1980). While the verdict must be sufficient to punish and deter others in similar circumstances, *Miller v. Carnation Co.,* 39 Colo.App. 1, 564 P.2d 127 (1977), it must not financially kill the defendant. *Tahoe Village Realty v. DeSmet,* 95 Nev. 131, 590 P.2d 1158 (1979).

Given this particular defendant, a large insurance company against whom the jury had already awarded $75,000 in punitive damages on a separate but related claim, the improper references to the wrongful death action and to community property laws, and the resulting $1 punitive damage award, we hold that the trial court abused its discretion in not granting a new trial on the punitive damages issue.

Remand of this cause for a new trial solely on the issue of punitive damages is the appropriate remedy. Other courts have approved of a new trial only on a punitive damages claim. *E.g., Neal v. Farmers Insurance Exchange,* 21 Cal.3d 910, 582 P.2d 980, 148 Cal.Rptr. 389 (1978) (affirmed grant of conditional new trial on punitive damages, subject to consent to remittitur); *Alhino v. Starr,* (remand for redetermination of amount of punitive damages); *Rosener v. Sears, Roebuck & Co.,* 110 Cal.App.3d 740, 168 Cal.Rptr. 237 (1980) (conditional new trial ordered on amount of punitive damages, unless consent to a remittitur), *appeal dism'd,* 450 U.S. 1051, 101 S.Ct. 1772, 68 L.Ed.2d 247 (1981); *Lassitter v. International Union of Operating Engineers* (affirmed remand for new trial on amount of punitive damages); *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254 (1976) (remittitur ordered or conditional new trial on amount of punitive damages); *Bank of North America v. Bell,* 493 S.W.2d 633 (Tex.Civ.App.1973) (conditioned affirmance on remittitur or otherwise remand for new trial on punitive damages); *Town of Jackson v. Shaw,* 569 P.2d 1246 (Wyo.1977)

(new trial on punitive damages unless consent to remittitur). It is true that those cases approving a new trial solely on the amount of punitive damages involved a finding that the award of punitive damages was excessive. We do not, however, see any logical distinction from the situation here where the amount of punitive damages is inadequate due to jury passion and prejudice.

Therefore, we affirm the judgment in the Estate's favor as to Aetna's liability and the award of $1,000 in compensatory damages. We remand this case to the superior court for a new trial on the issue of punitive damages. The plaintiff will be awarded costs on appeal.

MEYERSON, P.J., and CORCORAN, J., concur.